CJ-2022-6227
Timmons



IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| KENNETH TUROCZI and TYENE TUROCZI, Husband and Wife <br><br> Plaintiffs, <br><br> v. <br><br> THE TRAVELERS COMPANIES, INC, a/k/a TRAVELERS, a foreign insurance company <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. CJ-2022-6227 <br> ) <br> ) FILED IN DISTRICT COURT <br> ) OKLAHOMA COUNTY <br> ) <br> ) DEC 21 2022 <br> ) <br> ) RICK WARREN <br> ) COURT CLERK <br> 41 _____ |

## PETITION

COME NOW Kenneth Turoczi and Tyrene Turoczi, who are husband and wife, and for their cause(s) of action against the defendant, allege and state:

1. Plaintiffs are married together as husband and wife and at all times relevant herein resided in Oklahoma City, Oklahoma County, State of Oklahoma, wherein they jointly owned a residence located at 11701 Silvermoon Drive, Oklahoma City, OK. All acts or omissions by defendant herein concerning its insurance coverage of their loss(es) vis a vis this residence occurred within this County whereby jurisdiction of their claim(s) in this matter is properly laid with this Honorable Court.

2. Defendant is a foreign insurance company formed under and existing in the State of Minnesota under the laws of that State with its' principal place of business in the city of New York City, State of New York. Defendant was and is licensed with the State of Oklahoma to do business herein as a purveyor of insurance, including so-called

Notice of Removal

Exhibit 2

"Homeowners Coverage" and was licensed to do business under the requirements of Title 36, Oklahoma Statutes, Chapter 1 (Insurance Code) Article 12A-1, which required and continues to require certain standards of settlement practice by those companies herein.

3. Plaintiffs carried a policy of homeowners coverage for over a dozen years with Travelers upon the residence involved herein, which coverage was updated annually. Plaintiffs have referenced the

travelers policy as it was written in 2018 before the casualty in question occurred, and make reference to several clearly articulated provisions of coverage, which Travelers simply ignored and allowed them to completely avoid the promised coverage owed to plaintiffs or if they did often underpaid and/or delayed such payments long after the loss was made known to them by plaintiffs, who had in fact already furnished adequate proof of such loss. There were several of Travelers adjusters, in particular the initial adjuster whose present name is not remembered but (perhaps one "Citadel" hereafter "Agent X") and later Asah Watts who replaced Agent X, whose favorite responses/excuses when such reported losses were not timely made was that "they didn't have the documents" or "we can't locate the documents (i.e., the already proffered proofs of loss)" and could not pay the claims "until they got the documents"/proof of loss. Travelers ultimately paid some of these losses, but forced plaintiffs once again to incur staggering legal obligations to prove a loss which was, as stated, actually made known to them much earlier. See, Affidavit of Plaintiff Kenneth Turoczi dated (with exhibits of monetary loss) *once again* provided to Travelers *circa* March 13, 2022, but which proof of losses had in fact been provided to

Travelers' adjusters much earlier at the time(s) they were incurred *circa March*, 2020. This is an example of orginal non-payment and significantly later payment when some payment was tendered..

4. The loss(es) at issue occurred late in 2018 mostly on the 22d day of December of that year. Travelers Agent X was made known of this loss that same day. The loss was an electrical fire, which started sometime in the afternoon of that day and had by evening virtually destroyed the entire structure. Yet the residence was not totally beyond repair and was ultimately rebuilt by plaintiffs . . . much of it at their own expense. It was Travelers handling of its obligations in requiring such extensive repair (for the stated reason of "preserving the property from further detioriation and loss" which it continually advised plaintiffs to do, but in forcing plaintiffs to "shoulder" payment for same that caused much of the bad faith and unfair settlement treatment giving rise to the unfair insurance settlement causes of action herein. An example of this is the losses that continued to occur, because of the extensive rot and mildew that remained, because of the enormous amount of ash mingled with the huge amount of water the Oklama City Fire Department was forced to pump into the huge, blazing infero (it was a Five Alarm Fire of a very large structure that was never completely quelled) that kept the fungi-feeding debris kept multiplying at a rapid pace and plaintiff's losses to increase.

5. The bad faith actions of Travelers for the most part do not arise from a refusal to pay any monies on a certain loss, but rather, upon an application of their policy in a manner that wrongfully and greatly reduces the *amount* they did offer to pay upon

3

various losses; e.g., application to depreciation provisions of the policy based solely upon age, when in fact the plaintiffs had very recently before the fire completely finished an extensive, complete restoration. both interior and exterior (and in some cases an *upgrade* of the residential structure) all of which was supervised by their mortgage company . However, the defendant nonethess given its actual knowledge of this *complete and in prasenti* **restoration** continued to employ its  "depreciation" provisions allowing it to "deduct" over $100,000 of its otherwise insurance payment obligation.

6.  This same bad faith actually began at the beginning with Agent X who, when informed of the loss actually denied *any* coverage under the policy in question of its so-called " boarding" of  surviving animals provisions, which he said "was not provided" under the policy terms.  It was because of this initial denial that the entire family was made homeless on the Eve of Christmas, because they could not take their surviving pet animals into a motel or hotel and they had no other place to go with these animals, except to a building in Southwest Oklahoma City. Ironically, this building was a church being used as a "homeless resource center" that had been begun by Ms. Turoczi's grandparents many decades before.  The church, however, was not heated (because the heat was not turned on at the time).   This structure was what the plaintiffs were forced to use for shelter (they had no other recourse because they had to keep there out of the frigid temperature present at the time) because of Agent X's misrepresentation(s) at the outset. It is significant that Agent X was replaced by Agent Watts sometime in January, 2020, who admitted to plaintiffs that Agent X wrongfully misrepresented the policy provisions

and that it did in fact provide for pet boarding. The defendant eventually did start paying for future boarding at the beginning of 2019 due to Agent Watts causing the coverage which was wrongfully denied to be reinstated and continued thereafter. This, however, as will be stated, did not rectify the enormous pain and trauma the entire family was forced to endure due to defendant's policy misrepresentations.

7. These type of unfair settlement practices, however, continued when the policy provisions are applied with regard to other areas of loss, such as debris removal, recoverable depreciation, the mold endorsement (which was another part of the claim defendant through Mr. Watts said could not be paid because Travelers "didn't get the mold report" -- which had been *several* different times to Travelers), the additional five percent amended limit provision of the policy's "additional coverage" provisions , paragraph 16. All these *additional* unfair settlement machnitations were made known to defendant's legal counsel by letter dated March 16, 2022.

8. It is in these premises of numerous and separate acts of unfair settlement treatment by defendant that bad faith insurance practices by Travelers upon their insured occurred, including---but not necessarily limited to these generic unfair acts of settlement generally recognized under both statutory and common Oklahoma law:

    (a) lying to the policy holder about available coverage (e.g., Agent X)

    (b) not acting promptly in payment of plaintiffs' claim for loss(es);

    (c) intentionally offering amounts that were unreasonably low given the specific loss at issue;

(d) forcing the policy holder to needlessly file a law suit (such as this litigation);

(e) attempting to cheat and defraud the policy holder;

(f) using the desperate circumstances of the policy holder as leverage to pay less than the amount really owed;

9. What is most revealing under this course of conduct by the defendant insurer is that it utterly "shouts" *intentional* unfair treatment, because the unfair acts have been numerous, separate, knowing . . . and most significantly "*ongoing*"! It began the day the smoke had not yet settled with Agent X's crass misrepresentation that animal boarding coverage was "not" available under the policy and continued with defendant's misuse of its' depreciation provisions in the face of abundant evidence known to defendant that the structure was not physically depreciated at the time of the fire but had totally restored under supervision of insured's mortgage holder to an absolutely new condition. It has, also, continued with defendant's refusal to recognize policy provisions it has written itself and still not recognized when made known to it through its legal counsel, such as the mold endorsement, the additional coverage provisions of Paragraph 16, the coverage provision of ordinance of law code upgrade, the like. It, also, exists in the original undervauation of both real and personal property assets covered by defendant's policy and a refusal to even address, let alone correct, these values even though their insured have on numerous occasions requested them to do so.

WHEREFORE, premises considered, plaintiffs pray for judgment in their favor and against defendant for a finding that its acts were in contumacious violation of this

State's law requiring that insurers settle claims under a policy they have written to an insured in a fair and reasonable manner and that such misconduct described herein was in fact and at law done in bad faith. Plaintiffs pray for judgment in their favor for the monetary loss to them directly caused by defendant's acts of comission and omission done in bad faith, for all costs herein incurred, including their costs for legal fees, and for such other and further relief to which they may in the premises be justly entitled.

Respectfully submitted.

JURY TRIAL REQUESTED.

*/s/ Gary W. Gardenhire*
Gary W. Gardenhire, OBA No. 3235
1005 Fountain Gate Cir.
Norman, OK 73072
Office Tel.: 405-701-3398
ATTORNEY FOR PLAINTIFFS