

CONTINUATION DECLARATIONS

# Homeowners Policy

## INSURED AND AGENT INFORMATION

**(Named Insured)**
**Name and Mailing Address**
KENNETH TUROCZI
11701 SILVERMOON DR
OKLAHOMA CITY OK 73162-2224

**Agent Information**
TRAVELERS
PO BOX 59059
KNOXVILLE TN    379509059

**The Residence premises is located at**
11701 SILVERMOON DR
OKLAHOMA CITY OK 73162-2224

**Mortgagee Name and Address**
1. SELECT PORTFOLIO SERVICING INC
   ISAOA
   PO BOX 7277
   SPRINGFIELD      OH 45501
   LOAN NUMBER 0011857703

## POLICY INFORMATION

**Homeowners Policy No.**
601393616 633 1

**Policy Period**
10/02/18 - 10/02/19    12:01 A.M.
Standard Time at the residence premises

**Your Insurer**
Travelers Commercial Insurance Company
One of The Travelers Property Casualty Companies
One Tower Square, Hartford, CT 06183

**For Claim Service Call**      1-800-CLAIM33
**For Policy Service Call**     1-800-982-6684

**TOTAL POLICY PREMIUM**                                 $  5,824.00
This is not a bill; you will be invoiced separately.

## Motion to Dismiss
## Ex. 1

Continued on next page



## POLICY COVERAGES AND LIMITS OF LIABILITY

LIMIT

**Section I - Property Coverages**

A - DWELLING...................................................................... $   315,000
B - OTHER STRUCTURES............................................................. $    31,500
C - PERSONAL PROPERTY........................................................... $   220,500
D - LOSS OF USE................................................................. $    94,500

LIMITED FUNGI, OTHER MICROBES OR ROT REMEDIATION
Section I - Property Coverage.................................................. $     5,000

**Section II - Liability Coverages**

E - Personal Liability (Bodily Injury and Property Damage) Each Occurrence.. $   300,000
F - Medical Payments to Others Each Person..................................... $     5,000

## POLICY SAVINGS AND DEDUCTIBLES

**Your Savings**

The following credits or discounts reduced your premium: Account Discount,
Loss Free Discount, Protective Devices Discount

**Deductibles**                                                              DEDUCTIBLE

Section I  Property Coverages Deductible (All Other Perils)............... $     1,500
Section I  Windstorm Or Hail Deductible Percentage     1.0% of Coverage A $     3,150

In case of loss under section I, only that part of the loss over the stated
deductible is covered.

## OPTIONAL ENDORSEMENTS AND COVERAGES                    LIMIT          PREMIUM

**Optional Endorsements**

HO-290   (06-06) Personal Property Replacement Cost......................      Included
                 Loss Settlement
HO-312   (06-06) Windstorm or Hail Percentage Deductible.................      Included
HO-420   (06-06) Additional Replacement Cost Protection....   25%             Included

## MANDATORY FORMS AND ENDORSEMENTS

HO-3      (10-06) Homeowners 3 Special Form
HO-300 OK (07-18) Special Provisions - Oklahoma

Continued on next page



The Declarations with your Homeowners Policy, HO-3 (10-06), and the optional
Endorsements and coverages listed above, form your Homeowners Insurance Policy.

**\*Note:** The additional cost for any optional endorsement or coverage shown as
"Included" is contained in the Total Policy Premium amount.

## For Your Information

For information about how Travelers compensates independent agents and
brokers, please visit www.Travelers.com or call our toll free telephone
number 1-866-904-8348. You may also request a written copy from Marketing
at One Tower Square, 2GSA, Hartford, Connecticut 06183.

We have increased the coverage limit on your home by .5% to reflect the estimated
cost to rebuild your home. This increase is based on information we received from
CoreLogic, an independent firm specializing in construction costs. Each home is unique
and you know your home best. Your coverage amount may need to be adjusted, higher or
lower, based on your home's specific construction details, updates or upgrades. If you
disagree with your coverage limit, please contact your Travelers representative or
agent who can work with you to help you decide the appropriate amount of insurance
for your home and process any necessary adjustments.

It is important that the information we used to rate your policy is correct
It is your responsibility to make sure that the information on these Declarations
is accurate and complete, including checking that you are receiving all the
discounts for which you are eligible. To see a full list of discounts offered,
including discounts for having multiple policies with us, protecting your home
with safety devices and being claim free, go to www.travelers.com/discounts
Once at the website, type in your policy number 6013936166331 and product code
HQ2 to view the discounts available. If any of the information on the Declarations
has changed, appears incorrect, or is missing, please advise your Travelers agent or
representative immediately. Your Travelers agent or representative is also available to
review the information on the Declarations with you.

If you have recently replaced your roof it is important that you inform your
Travelers Representative.

This is not a bill.  You will be billed separately for this transaction.

Continued on next page



---

**For Your Information (continued)**

**Warning:**

Any person who knowingly, and with intent to injure, defraud, or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**SPECIAL WINDSTORM DEDUCTIBLE APPLIES: SEE ENDORSEMENT HO-312**

Thank you for insuring with Travelers. We appreciate your business. If you have any questions about your insurance, please contact your agent or representative.

These declarations with policy provisions HO-3 (10-06) and any attached endorsements form your Homeowners Insurance Policy. Please keep them with your policy for future reference.



**TRAVELERS**

This is to certify that this is a reproduction, from the company's records, of the insurance policy between the insured and the insuring company as described on the Declarations Page.   It is a full, true and complete reproduction of the insurance policy.   No insurance is afforded hereunder.

Signature: *Christina DiLorenzo*

Date: 1.8.2019

HO-300 OK (07-18)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SPECIAL PROVISIONS – OKLAHOMA

**Forms HO-2 Broad Form, HO-3 Special Form, HO-4 Contents Broad Form and HO-6 Unit Owners Form are amended as follows:**

**SECTION I – PROPERTY COVERAGES**
**ADDITIONAL COVERAGES**

**8. Loss Assessment** is deleted and replaced with the following:

**8. Loss Assessment.**

a. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to the property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage A (for Form **HO-4**, Peril Insured Against under Coverage C).

This coverage does not apply to assessments made as a result of damage caused by:

1. Earthquake and earthquake aftershocks; or

2. Land shock waves or tremors which occur before, during or after volcanic activity.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will apply only one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

b. We do not cover assessments charged against you or a corporation or association of property owners by any government body.

c. Section I Condition **17.** Policy Period does not apply to this coverage (for Form **HO-4** Condition **16**).

**SECTION I – PERILS INSURED AGAINST**

In Forms **HO-3** and **HO-6** Paragraph **2.c.(5)** is deleted and replaced with the following:

(5) Constant or repeated seepage or leakage of water or stream, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of weeks, months or years; or

In Form **HO-2** Paragraph **12.b.(5)** is deleted and replaced with the following:

(5) To a building caused by constant or repeated seepage or leakage that occurs over a period of weeks, months or years.

In Form **HO-4** Paragraph **12.b.(4)** is deleted and replaced with the following:

(4) Caused by constant or repeated seepage or leakage that occurs over a period of weeks, months or years.

In Forms **HO-2**, **HO-3** and **HO-6** Coverage **C** – Personal Property, **16. Volcanic Eruption** is deleted. In Form **HO-4**, **16. Volcanic Eruption** is deleted.

**SECTION I – EXCLUSIONS**

The first paragraph of this section is deleted and replaced by the following:

We do not cover any direct or indirect loss or damage caused by, resulting from, contributing to or aggravated by any of these excluded perils. Loss from any of these perils is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

These exclusions apply whether or not the loss event:

(1) Results in widespread damage;

(2) Affects a substantial area; or

(3) Occurs gradually or suddenly.

These exclusions also apply whether or not the loss event arises from:

(1) Any acts of nature;

(2) Any human action or inaction;

(3) The forces of animals, plants or other living or dead organisms; or

(4) Any other natural or artificial process.

**2. Earth Movement** is deleted and replaced by the following:

**2. Earth Movement**, meaning events that include but are not limited to the following:

© 2018 The Travelers Indemnity Company. All rights reserved.

**HO-300 OK (07-18)**    Includes copyrighted material of Insurance Services Office, Inc. with its permission.    **Page 1 of 3**

005263/00463  F311SCHZ  9205  08/13/18

a. Earthquake and earthquake aftershocks;

b. Volcano activity including but not limited to:

    (1) Volcanic eruption;

    (2) Volcanic explosion;

    (3) Effusion of volcanic material; or

    (4) Lava flow;

c. Mudslide, including mudflow, debris flow, landslide, avalanche, or sediment;

d. Sinkhole;

e. Subsidence;

f. Excavation collapse;

g. Erosion; or

h. Any expansion, shifting, rising, sinking, contracting, or settling of the earth, soil or land.

This exclusion applies whether or not the earth, soil or land is combined or mixed with water or any other liquid or natural or man made material.

However, loss caused directly by the specific perils:

a. fire;

b. explosion;

c. breakage of building or dwelling glass or safety glazing material, including storm doors or windows; or

d. theft;

following any earth movement is covered.

3. **Water Damage** is deleted and replaced by the following:

3. **Water Damage**, meaning;

    a. Flood, surface water, ground water, subsurface water, storm surge, waves, wave wash, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, whether or not a result of precipitation or driven by wind;

    b. Any water or water borne material that enters through or backs up from a sewer or drain, or which overflows from a sump, sump pump, related equipment or other system designed to remove subsurface water which is drained from the foundation area;

    c. Any water or water borne material located below the surface of the ground including water or water borne material:

        (1) Which exerts pressure on, seeps, leaks or flows into:

        (a) Any part of the dwelling or other structures;

        (b) The foundation of the dwelling or other structures;

        (c) Any paved surface located on the "residence premises"; or

        (d) Any spa, hot tub, or swimming pool.

        (2) Which causes earth movement; or

    d. Any overflow, release, migration or discharge of water in any manner from a dam, levee, dike, hurricane barrier or any water or flood control device.

Direct loss by fire, explosion or theft resulting from "water damage" will be covered.

8. **Intentional Loss** is deleted and replaced by the following:

8. **Intentional Loss**

    (a) We do not provide coverage for any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

    (b) However, this exclusion will not apply to deny an "insured's" claim for an otherwise covered property loss under this policy if such loss is caused by an act of domestic violence by another "insured" under this policy and the "insured" making claim:

        (1) Did not cooperate in or contribute to the creation of the loss; and

        (2) Cooperates in any investigation relating to the loss.

    We may apply reasonable standards of proof for such claims.

    (c) If we pay a claim pursuant to paragraph **8.(b)**, our payment to the "insured" is limited to that "insured's" insurable interest in the property less any payments we first made to a mortgagee or other party with a secured interest in the property. In no event will we pay more than the limit of liability.

**SECTION I – CONDITIONS**

2. **Duties After Loss.** The first paragraph of this section is deleted and replaced by the following:

In case of a loss to covered property, we have no duty to provide coverage under this policy if the following duties are not performed. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either.

© 2018 The Travelers Indemnity Company. All rights reserved.

 Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Paragraph a. is deleted and replaced by:

**a.** Give us prompt notice. With respect to a loss caused by the peril of windstorm or hail, that notice must occur no later than one year from the date of loss.

**6. Loss Payment** is deleted and replaced by the following:

**6. Loss Payment**. We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment.

Loss will be payable:

**a.** Within 60 days after we reach an agreement with you or there is a filing of an appraisal award with us; or

**b.** Within 30 days after there is an entry of a final judgment.

**7. Appraisal** is deleted and replaced by the following:

**7. Appraisal**. If you and we fail to agree as to the actual cash value or the amount of loss, either party may make written demand for an appraisal of the loss. In this event, only the party which demanded the appraisal will be bound by the results of that appraisal. Each party will choose a competent and disinterested appraiser within 20 days after the written demand has been made. The two appraisers will choose a competent and disinterested umpire. If they cannot agree upon an umpire within 15 days, then, at the request of either you or us, after notice of hearing to the nonrequesting party by certified mail, the umpire shall be selected by a judge of a district court in the county where the loss occurred. The appraisers will separately state the actual cash value and loss to each item. If the appraisers submit a written report of agreement to us, the amount agreed upon will be the amount of loss and will be binding on that party which demanded the appraisal. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of actual cash value and loss and will be binding on that party which demanded the appraisal.

Each party will:

**a.** Pay its own appraiser; and

**b.** Bear the expenses of the appraisal and umpire equally.

The following Condition is added:

**Our Duties After Loss**. It shall be our duty, after receiving a proof of loss, to submit a written offer of settlement or rejection of the claim, or notice of the need for more time to investigate the claim, to you within forty five (45) days of receipt of the proof of loss.

## SECTION II – ADDITIONAL COVERAGES

The following additional coverage is added:

**5. Property Damage Coverage For Military Personnel and Federal Government Employees**.

If an "insured" is:

**a.** A United States Government Employee; or

**b.** A member of the United States Military,

We agree to pay for "property damage" to United States government property, for which such "insured" is responsible under applicable rules or regulations.

Payment for such "property damage" will be at replacement cost. Under this endorsement "replacement cost" is defined as the amount necessary to repair or replace the damaged property with no deduction for depreciation, subject to the Limit of Liability for this Additional Coverage.

Our Limit of Liability, per "occurrence", under this Additional Coverage for all damages resulting from any one "occurrence" shall not exceed two months basic pay for the "insured", as of the time of the "occurrence".

We will not pay for "property damage" to:

**a.** Aircraft;

**b.** "Motor vehicles";

**c.** Watercraft; or

**d.** Weapons.

We will not pay for "property damage":

**a.** To the extent of any amount payable under Section I of this policy; or

**b.** Caused intentionally by any "insured" who is 13 years of age or older.

All other provisions of this policy apply.

© 2018 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

005264/00463  F3115CHZ  9205  08/13/18

COVHO3



# Homeowners Policy Booklet

# from Travelers

**Especially for:**
**KENNETH TUROCZI**





**Prepared by:**
**TRAVELERS**

OKLAHOMA
HOMEOWNERS - SPECIAL FORM HO-3 (10-06)

## *The Contents of This Booklet*

**1.   Your Declarations:**

A summary of your coverages, amounts of insurance, and premiums for those coverages under the policy.


**2.   Homeowners Policy:**

The policy contract describing coverages, rights, and obligations.


**3.   Endorsements:**

Additional coverages or policy provisions applicable to your policy.


**4.   Important Notices:**

Information required by your state but not part of your policy provisions.

# YOUR HOMEOWNERS POLICY QUICK REFERENCE

|  | DECLARATIONS PAGE |  |
|---|---|---|
|  | **Your Name** |  |
|  | **Location of Your Residence** |  |
|  | **Policy Period** |  |
|  | **Policy Coverages** |  |
|  | **Limits of Liability** |  |
|  | **Deductible Amounts** |  |
|  |  | **Beginning On Page** |
|  | AGREEMENT ............................................................ 1 |  |
|  | DEFINITIONS ........................................................... 1 |  |
| **SECTION I PROPERTY COVERAGES** | COVERAGES ............................................................ 3 |  |
|  | Coverage A - Dwelling ............................................. 3 |  |
|  | Coverage B - Other Structures ................................. 3 |  |
|  | Coverage C - Personal Property ............................... 3 |  |
|  | Coverage D - Loss of Use ........................................ 5 |  |
|  | Additional Coverages ............................................... 5 |  |
|  | PERILS INSURED AGAINST .................................... 10 |  |
|  | EXCLUSIONS .......................................................... 12 |  |
|  | CONDITIONS .......................................................... 14 |  |
|  | Duties After Loss .................................................... 14 |  |
|  | Loss Settlement ...................................................... 15 |  |
|  | Loss Deductible ...................................................... 16 |  |
|  | Policy Period .......................................................... 17 |  |
| **SECTION II LIABILITY COVERAGES** | COVERAGES ............................................................ 17 |  |
|  | Coverage E - Personal Liability ................................ 17 |  |
|  | Coverage F - Medical Payments to Others ................. 17 |  |
|  | ADDITIONAL COVERAGES ...................................... 18 |  |
|  | EXCLUSIONS .......................................................... 19 |  |
|  | CONDITIONS .......................................................... 23 |  |
|  | Limit of Liability ...................................................... 23 |  |
|  | Duties After Occurrence .......................................... 23 |  |
|  | Policy Period .......................................................... 23 |  |
| **SECTION I and SECTION II CONDITIONS** | CONDITIONS .......................................................... 24 |  |
|  | Cancellation ........................................................... 24 |  |
|  | Nonrenewal ............................................................ 24 |  |

HO-3  (10-06)

# HOMEOWNERS 3 – SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the named "insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

   **a.** Liability for "bodily injury" or "property damage" arising out of the:

   (1) Ownership of such vehicle or craft by an "insured";

   (2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

   (3) Entrustment of such vehicle or craft by an "insured" to any person;

   (4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

   (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   **b.** For the purpose of this definition:

   (1) Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

   (2) Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

   (3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

   (4) Motor vehicle means a "motor vehicle" as defined in **9.** below.

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "Business" means:

   **a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   **b.** Any other activity engaged in for money or other compensation, except the following:

   (1) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

   (2) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

   (3) Providing home day care services to a relative of an "insured".

4. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

5. "Fuel system" means:

   **a.** One or more containers, tanks or vessels which have a total combined fuel storage capacity of 100 or more U.S. gallons; and:

   (1) Are, or were, used to hold fuel; and

   (2) Are, or were, located on any one location;

   **b.** Any pumping apparatus, which includes the motor, gauge, nozzle, hose or pipes that are, or were, connected to one or more containers, tanks or vessels described in Paragraph **a.**;

c. Filler pipes and flues connected to one or more containers, tanks or vessels described in Paragraph **a.**;

d. A boiler, furnace or a water heater, the fuel for which is stored in a container, tank or vessel described in Paragraph **a.**;

e. Fittings and pipes connecting the boiler, furnace or water heater to one or more containers, tanks or vessels described in Paragraph **a.**; or

f. A structure that is specifically designed and built to hold escaped or released fuel from one or more containers, tanks or vessels described in Paragraph **a.**

A "fuel system" does not include any fuel tanks that are permanently affixed to a motor vehicle or watercraft owned by an "insured", used for powering the motor vehicle or watercraft and not used at any time or in any manner for "business".

6. "Fungi"

a. **"Fungi"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by "fungi".

b. Under Section II, this does not include any "fungi" that are, are on, or are contained in, a product or goods intended for consumption.

7. "Insured" means:

a. You and residents of your household who are:

(1) Your relatives; or

(2) Other persons under the age of 21 and in the care of any person named above.

b. A student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

(1) 24 and your relative; or

(2) 21 and in your care or the care of a person described in **a.(1)** above; or

c. Any Additional Insured named in the Declarations, but only with respect to Coverages A, B, E and F and only for the "residence premises".

d. Under Section II:

(1) With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by

you or any person included in **a.** or **b.** above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

(2) With respect to any vehicle to which this policy applies:

(a) Persons while engaged in your employ or that of any person included in **a.** or **b.** above; or

(b) Other persons using the vehicle on an "insured location" with your consent.

Under both Sections I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

8. "Insured location" means:

a. The "residence premises";

b. The part of other premises, other structures and grounds used by you as a residence and:

(1) Which is shown in the Declarations; or

(2) Which is acquired by you during the policy period for your use as a residence;

c. Any premises used by you in connection with a premises described in **a.** and **b.** above;

d. Any part of a premises:

(1) Not owned by an "insured"; and

(2) Where an "insured" is temporarily residing;

e. Vacant land, other than farm land, owned by or rented to an "insured";

f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

g. Individual or family cemetery plots or burial vaults of an "insured";

h. Any part of a premises occasionally rented to an "insured" for other than "business" use;

i. Any premises owned by you and rented to others for use as a residence by not more than four families, if shown in the Declarations as an ADDITIONAL RESIDENCE RENTED TO OTHERS; or

j. Any other structure on the "residence premises" rented to others as a private residence for which a limit of liability is shown in the

Declarations for STRUCTURES RENTED TO OTHERS.

**9.** "Motor vehicle" means:

   **a.** A self-propelled land or amphibious vehicle; or

   **b.** Any trailer or semi-trailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

**10.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period, in:

   **a.** "bodily injury"; or

   **b.** "property damage".

**11.** "Property Damage" means physical injury to, destruction of, or loss of use of tangible property.

**12.** "Residence employee" means:

   **a.** An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, if the employee's duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

   **b.** One who performs similar duties elsewhere not related to the "business" of an "insured."

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

**13.** "Residence premises" means:

   **a.** The one family dwelling where you reside; or

   **b.** The two, three or four family dwelling where you reside in at least one of the family units;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

---

## SECTION I - PROPERTY COVERAGES

### COVERAGE A - DWELLING

**1.** We cover:

   **a.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

   **b.** Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

**2.** We do not cover land, including land on which the dwelling is located.

### COVERAGE B - OTHER STRUCTURES

**1.** We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

**2.** We do not cover:

   **a.** Land, including land on which the other structures are located;

   **b.** Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage. However, we do cover other structures rented to others as a private residence for which a limit of liability is shown in the Declarations for STRUCTURES RENTED TO OTHERS;

   **c.** Other structures from which any "business" is conducted; or

   **d.** Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

### COVERAGE C - PERSONAL PROPERTY

**1. Covered Property.** We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

   **a.** Others while the property is on the part of the "residence premises" occupied by an "insured"; or

   **b.** A guest or a "residence employee", while the property is in any residence occupied by an "insured".

This request may be made after a loss.

**2. Limit For Property At Other Residences.** Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

**a.** Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

**b.** In a newly acquired principal residence for 30 days from the time you begin to move the property there.

**3. Special Limits of Liability.** The special limit for each category described below is the greater of the limit shown below or the special limit for such category, if any, shown in the Declarations. Such limit is the total limit for each loss for all property in that category. These special limits do not increase the Coverage C limit of liability.

**a.** $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

**b.** $1,500 on securities, accounts, deeds, evidence of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

**c.** $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

**d.** $1,500 on trailers or semitrailers not used with watercraft of all types.

**e.** $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

**f.** $2,500 for loss by theft of firearms and related equipment.

**g.** $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold, platinum or pewter.

**h.** $5,000 on property, on the "residence premises", used primarily for "business" purposes.

**i.** $1,500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and accessories described in category **j.** below.

**j.** $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

**k.** $250 on tapes, records, discs or other media that can be used with any electronic apparatus, while in or upon a "motor vehicle".

**4. Property Not Covered**

We do not cover:

**a.** Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

**b.** Animals, birds or fish;

**c.** "Motor vehicles".

   **(1)** This includes:

      **(a)** Their accessories, equipment and parts; or

      **(b)** Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle".

      The exclusion of property described in **(a)** and **(b)** above applies only while such property is in or upon the "motor vehicle".

   **(2)** We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

      **(a)** Used to service an "insured's" residence; or

      **(b)** Designed to assist the handicapped;

**d.** Aircraft meaning any contrivance used or designed for flight, including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

**e.** Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

f.  Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g.  Property in an apartment regularly rented or held for rental to others by an "insured", except as provided under Additional Coverage **11.** Landlord's Furnishings;

h.  Property rented or held for rental to others off the "residence premises";

i.  "Business" data, including such data stored in:

(1)  Books of account, drawings or other paper records; or

(2)  Computers and related equipment.

We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

j.  Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in Additional Coverage **7.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money;

k.  Grave markers, except as provided in Additional Coverage **13.** Grave Markers; or

l.  Water or steam.

### COVERAGE D - LOSS OF USE

The limit of liability for Coverage D is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

1.  **Additional Living Expense.** If a loss covered under Section I makes that part of the "residence premises" where you reside unfit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living. However, additional living expense due to "fungi", other microbes or rot remediation will not be paid in addition to any amounts paid or payable under Additional Coverage **16.** Limited "Fungi", Other Microbes Or Rot Remediation.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2.  **Fair Rental Value.** If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such

premises less any expenses that do not continue while it is not fit to live in. However, fair rental value due to "fungi", other microbes or rot remediation will not be paid in addition to any amounts paid or payable under Additional Coverage **16.** Limited "Fungi", Other Microbes Or Rot Remediation.

Payment will be for the shortest time required to repair or replace such premises.

Written proof that part of the "residence premises" is rented, was held for rental at the time of loss or has been rented within the 24 months prior to the date of loss is required.

3.  **Civil Authority Prohibits Use.** If a civil authority prohibits you from use of the "residence premises" as a result of direct physical damage to neighboring premises caused by a Peril Insured Against under this policy, we cover resulting **1.** Additional Living Expense and **2.** Fair Rental Value as provided above for no more than two weeks. Neighboring premises means a premises in sufficient proximity to the "residence premises" that there exists a reasonable risk that the peril affecting the neighboring premises could endanger either the "residence premises" or the safety of its occupants while in the "residence premises".

4.  **Loss Or Expense Not Covered.** We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

### ADDITIONAL COVERAGES

Unless otherwise stated:
The following coverages are additional insurance; and
They are subject to your deductible.

1.  **Debris Removal.** We will pay your reasonable expense for the removal of:

a.  Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

b.  Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

We do not pay for the removal of trees except as provided under **2.** Tree Removal below.

**2. Tree Removal.** We will pay your reasonable expense, up to $1,000, for the removal of one or more trees fallen on the "residence premises" as a result of a Peril Insured Against, provided the tree(s):

**a.** Damage(s) a covered structure; or

**b.** Do(es) not damage a covered structure, but:

**(1)** Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

**(2)** Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

**3. Reasonable Repairs.**

**a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

**b.** If the measures taken involve repair to other damaged property, we will pay only if that property is covered under this policy and the damage is caused by a Peril Insured Against.

**c.** This coverage does not increase the limit of liability that applies to the covered property; or

**d.** Relieve you of your duties, in case of a loss to covered property, described in **2.d.** under Section I – Conditions.

**4. Trees, Shrubs And Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

**a.** Fire or Lightning;

**b.** Explosion;

**c.** Riot or Civil Commotion;

**d.** Aircraft;

**e.** Vehicles not owned or operated by a resident of the "residence premises";

**f.** Vandalism or Malicious Mischief; or

**g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

**5. Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

No deductible applies to this coverage.

**6. Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

**7. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money.**

**a.** We will pay up to the greater of $1,000, or the higher amount, if any, shown in the Declarations for CREDIT CARD, for:

**(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

**(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

**(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

**(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

No deductible applies to this coverage.

**b.** All loss resulting from a series of acts:

**(1)** Committed by any one person or group of persons acting in concert; or

**(2)** In which any one person or group of persons acting in concert is concerned or implicated;

Is considered to be one loss.

**c.** We do not cover:

**(1)** Use of a credit card, electronic fund transfer card or access device:

**(a)** By a resident of your household;

**(b)** By a person who has been entrusted with either type of card or access device; or

**(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

**(2)** Loss arising out of "business" use or dishonesty of an "insured".

**d.** If the coverage in **a.** applies, the following defense provisions also apply:

**(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

**(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

**(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

**8. Loss Assessment.**

**a.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage A, other than:

**(1)** Earthquake; or

**(2)** Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will apply only

one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

**b.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**c.** Section I Condition **17.** Policy Period does not apply to this coverage.

**9. Collapse.**

**a.** With respect to this Additional Coverage:

**(1)** Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

**(2)** A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

**(3)** A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

**(4)** A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**b.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

**(1)** The Perils Insured Against named under Coverage C;

**(2)** Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse or there are visible signs of water damage and the "insured" has not taken prompt action to prevent further damage;

**(3)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

**(4)** Weight of contents, equipment, animals or people;

**(5)** Weight of rain which collects on a roof; or

**(6)** Use of defective material or methods in construction, remodeling or renovation if



the collapse occurs during the course of the construction, remodeling or renovation.

c. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **b.**(2) through (6) above, unless the loss is a direct result of the collapse of a building or any part of a building.

d. This coverage does not increase the limit of liability that applies to the damaged covered property.

10. **Glass Or Safety Glazing Material.**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.**(3) above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.**(2) above. Vacant means substantially empty of personal property necessary to sustain normal occupancy. A dwelling being constructed is not considered vacant.

c. This coverage does not increase the limit of liability that applies to the damaged property.

11. **Landlord's Furnishings.** We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage C, other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

12. **Ordinance or Law.**

a. You may use up to the greater of 10%, or the higher percentage, if any, shown in the Declarations for ORDINANCE OR LAW, of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids,

alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**d.** The most we will pay for any increased costs to comply with any ordinance or law that becomes effective after the date of loss is $5,000.

**13. Grave Markers.** We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against in Coverage C.

This coverage does not increase the limits of liability that apply to the damaged covered property.

**14. Refrigerated Products Coverage.** We insure, up to $500, covered property stored in freezers or refrigerators on the "residence premises" for direct loss caused by:

**a.** Loss of power to the refrigeration unit. Loss of power means the complete or partial interruption of electric power due to conditions beyond an "insured's" control. Loss of power must be caused by damage to:

**(1)** Generating equipment; or

**(2)** Transmitting equipment; or

**b.** Mechanical failure of the unit which stores the property.

Coverage will apply only if you have maintained the refrigeration unit in proper working condition immediately prior to the loss.

This coverage does not increase the limit of liability for Coverage C.

We will pay only that part of the total of all loss payable that exceeds $100. No other deductible applies to this coverage.

The Power Failure exclusion does not apply to this coverage.

**15. Inflation Coverage.** We may adjust the limits of liability for Coverages A, B, C and D at the beginning of each successive policy term to reflect increases in the cost of insured property. The amount of such increase will be based on the data provided by the appraisal company shown in the Declarations. Payment of the required premium when due for the successive policy term will be sufficient to indicate your acceptance of the adjusted limits.

We will also adjust the limits of liability at the time of a loss by the same percentage pro rated from the effective date of the policy period or the effective date of change if you have requested a

change to the limit of liability for Coverage A during the policy period.

**16. Limited "Fungi", Other Microbes Or Rot Remediation.**

**a.** If a loss caused by a Peril Insured Against results in "fungi", other microbes or rot, we will pay for:

**(1)** Remediation of the "fungi", other microbes or rot. This includes payment for the reasonable and necessary cost to:

**(a)** Remove the "fungi", other microbes or rot from covered property or to repair, restore or replace that property; and

**(b)** Tear out and replace any part of the building as needed to gain access to the "fungi", other microbes or rot;

**(2)** Any reasonable and necessary increase in living expense you incur:

**(a)** So that your household can maintain its normal standard of living; or

**(b)** Loss of fair rental value;

if the "fungi", other microbes or rot makes the "residence premises" not fit to live in; and

**(3)** Any reasonable and necessary testing or monitoring of air or property to confirm the absence, presence or level of the "fungi", other microbes or rot, whether performed prior to, during or after removal, repair, restoration or replacement.

**b.** We will pay under this additional coverage only if:

**(1)** The covered loss occurs during the policy period;

**(2)** All reasonable means were used to save and preserve the property at the time of and after the covered loss; and

**(3)** We receive prompt notice of the covered cause of loss that is alleged to have resulted in "fungi", other microbes or rot.

**c.** The most we will pay under this additional coverage is the limit of liability shown in the Declarations for Limited "Fungi", Other Microbes Or Rot Remediation. This is the most we will pay for the total of all loss or costs regardless of the:

**(1)** Number of locations or items of property insured under this policy; or



**(2)** Number of losses or claims made.

**d.** This coverage does not increase the limit of liability that applies to the damaged property.

---

## SECTION I - PERILS INSURED AGAINST

### COVERAGE A – DWELLING AND COVERAGE B – OTHER STRUCTURES

**1.** We insure against risk of direct physical loss to property described in Coverages A and B.

**2.** We do not insure, however, for loss:

**a.** Excluded under Section I – Exclusions;

**b.** Involving collapse or danger of collapse, except as provided in Additional Coverage **9.** Collapse under Section I – Property Coverages; or

**c.** Caused by:

**(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion does not apply if you have used reasonable care to:

**(a)** Maintain heat in the building; or

**(b)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

**(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

**(a)** Fence, pavement, patio or swimming pool;

**(b)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

**(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

**(d)** Pier, wharf or dock;

**(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. Vacant means substantially empty of personal property necessary to sustain normal occupancy. A dwelling being constructed is not considered vacant;

**(5)** Constant or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more; or

**(6)** Any of the following:

**(a)** Wear and tear, marring, deterioration;

**(b)** Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

**(c)** Smog, rust or other corrosion;

**(d)** Smoke from agricultural smudging or industrial operations;

**(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of

bulkheads, pavements, patios, foot-
ings, foundations, walls, floors, roofs
or ceilings;

(g) Birds, vermin, rodents, or insects; or

(h) Animals owned or kept by an "in-
sured".

### Exception To c.(6)

Unless the loss is otherwise excluded, we
cover loss to property covered under Cover-
age A or B resulting from an accidental dis-
charge or overflow of water or steam from
within a plumbing, heating, air conditioning or
automatic fire protective sprinkler system or
household appliance on the "residence prem-
ises". This includes the cost to tear out and
replace any part of a building, or other struc-
ture, on the "residence premises", but only
when necessary to repair the system or appli-
ance. However, such tear out and replace-
ment coverage only applies to other
structures if the water or steam causes actual
damage to a building on the "residence prem-
ises".

We do not cover loss to the system or appli-
ance from which this water or steam escaped.

For purposes of this provision, a plumbing
system or household appliance does not in-
clude a sump, sump pump or related equip-
ment or a roof drain, gutter, down spout or
similar fixtures or equipment.

Under **2.b.** and **c.** above, any ensuing loss to
property described in Coverages A and B not ex-
cluded by any other provision in this policy is cov-
ered.

### COVERAGE C – PERSONAL PROPERTY

We insure for direct physical loss to the property de-
scribed in Coverage C caused by any of the following
perils, unless the loss is excluded in Section I - Exclu-
sions.

1. **Fire or lightning.**

2. **Windstorm or hail.**

    This peril includes loss to watercraft of all types
    and their trailers, furnishings, equipment, and out-
    board engines or motors, only while inside a fully
    enclosed building.

    This peril does not include loss to property con-
    tained in a building caused by rain, snow, sleet,
    sand or dust unless the direct force of wind or hail
    damages the building, causing an opening in a
    roof or wall and the rain, snow, sleet, sand or dust
    enters through this opening.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft.**

    This peril includes self-propelled missiles and
    spacecraft.

6. **Vehicles.**

7. **Smoke.**

    This peril means sudden and accidental damage
    from smoke, including the emission or puffback of
    smoke, soot, fumes or vapors from a boiler, fur-
    nace or related equipment.

    This peril does not include loss caused by smoke
    from agricultural smudging or industrial opera-
    tions.

8. **Vandalism or malicious mischief.**

9. **Theft.**

    a. This peril includes attempted theft and loss of
       property from a known place when it is likely
       that the property has been stolen.

    b. This peril does not include loss caused by
       theft:

       (1) Committed by an "insured";

       (2) In or to a dwelling under construction, or
           of materials and supplies for use in the
           construction until the dwelling is finished
           and occupied;

       (3) From that part of a "residence premises"
           rented by an "insured" to someone other
           than another "insured"; or

       (4) That occurs off the "residence premises"
           of:

           (a) Trailers, semitrailers and campers;

           (b) Watercraft of all types, and their fur-
               nishings, equipment and outboard
               engines or motors; or

           (c) Property while at any other residence
               owned by, rented to, or occupied by
               an "insured", except while an "in-
               sured" is temporarily living there.
               Property of an "insured" who is a stu-
               dent is covered while at the residence
               the student occupies to attend school
               as long as the student has been there
               at any time during the 60 days imme-
               diately before the loss.

**10. Falling Objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight Of Ice, Snow Or Sleet.**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

**12. Accidental Discharge Or Overflow Of Water Or Steam.**

a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

b. This peril does not include loss:

(1) To the system or appliance from which the water or steam escaped;

(2) Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing; or

(3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises";

c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

d. Section I – Exclusion **3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

**13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging.**

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

**14. Freezing.**

a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**15. Sudden And Accidental Damage From Artificially Generated Electrical Current.**

This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

**16. Volcanic Eruption.**

This peril does not include loss caused by earthquake, land shock waves or tremors.

---

## SECTION I - EXCLUSIONS

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

1. **Ordinance or Law**, meaning any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion **A.1.a.** does not apply to the amount of coverage

that may be provided for under Additional Coverage **12.** Ordinance or Law;

**b.** The requirements of which result in a loss in value to property.

**c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion **A.1.** applies whether or not the property has been physically damaged.

**2.** **Earth Movement**, meaning:

**a.** Earthquake including land shock waves or tremors before, during or after a volcanic eruption;

**b.** Landslide; mudslide, or mudflow;

**c.** Subsidence or sinkhole; or

**d.** Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature, unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This Exclusion **A.2.** does not apply to loss by theft.

**3.** **Water Damage**, meaning:

**a.** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

**b.** Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

**c.** Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

**4.** **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the "residence premises". But, if the failure results in a loss from a Peril Insured Against, on the "residence premises", we will pay for the loss caused by that peril.

**5.** **Neglect,** meaning neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6.** **War.** War includes the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7.** **Nuclear Hazard**, to the extent set forth in the Nuclear Hazard Clause of Section I - Conditions.

**8.** **Intentional Loss**, meaning any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9.** **Governmental Action**, meaning the destruction, confiscation or seizure of property described in Coverage A, B or C by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**10.** **"Fungi", Other Microbes or Rot,** meaning any loss or cost resulting from, arising out of, caused by, consisting of, or related to, "fungi", other microbes or rot. This exclusion does not apply to:

**a.** "Fungi", other microbes or rot remediation coverage that may be afforded under Additional Coverage **16.** Limited "Fungi", Other Microbes Or Rot Remediation; or

b. "Fungi", other microbes or rot that results from fire or lightning.

B. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded by any other provision in this policy is covered.

1. Weather conditions. However, this exclusion applies only if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

3. Faulty, inadequate or defective:

a. Planning, zoning, development, surveying, siting;

b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

c. Materials used in repair, construction, renovation or remodeling; or

d. Maintenance;

of part or all of any property whether on or off the "residence premises".

---

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

    a. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

    b. For more than the applicable limit of liability.

2. **Duties After Loss.** In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either.

    a. Give us prompt notice;

    b. Notify the police in case of loss by theft;

    c. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in Additional Coverage **7.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money;

    d. Protect the property from further damage. If repairs to the property are required, you must:

        (1) Make reasonable and necessary repairs to protect the property; and

        (2) Keep an accurate record of repair expenses;

    e. Cooperate with us in the investigation of a claim;

    f. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

    g. As often as we reasonably require:

        (1) Show the damaged property;

        (2) Provide us with records and documents we request and permit us to make copies; and

        (3) Submit to examination under oath, while not in the presence of another "insured", and sign the same;

    h. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

        (1) The time and cause of loss;

        (2) The interest of all "insureds" and all others in the property involved and all liens on the property;

        (3) Other insurance which may cover the loss;

        (4) Changes in title or occupancy of the property during the term of the policy;

        (5) Specifications of damaged buildings and detailed repair estimates;

        (6) The inventory of damaged personal property described in **f.** above;

**(7)** Receipts for additional living expenses incurred and records that support the fair rental value loss; and

**(8)** Evidence or affidavit that supports a claim under Additional Coverage **7.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money, stating the amount and cause of loss.

**3. Loss Settlement.** In this Condition **3.,** the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in Additional Coverage **12.** Ordinance Or Law. Covered property losses are settled as follows:

**a.** Property of the following types:

**(1)** Personal property;

**(2)** Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

**(3)** Structures that are not buildings; and

**(4)** Grave markers, including mausoleums;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

**b.** Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

**(1)** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

**(a)** The limit of liability under this policy that applies to the building;

**(b)** The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

**(c)** The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in **(b)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

**(2)** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

**(a)** The actual cash value of that part of the building damaged; or

**(b)** That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**(3)** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

**(a)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

**(b)** Those supports described in **(a)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(c)** Underground flues, pipes, wiring and drains.

**(4)** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **b.(1)** and **b.(2)** above.

However, if the cost to repair or replace the damage is less than $2,500, we will settle the loss as noted in **b.(1)** and **b.(2)** above whether or not actual repair or replacement is complete.

**(5)** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You

may then make claim for any additional liability according to the provisions of this Condition **3. Loss Settlement**, provided you notify us of your intent to do so within 180 days after the date of loss.

**4. Loss Deductible.** Unless otherwise stated in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I that exceeds the deductible amount shown in the Declarations.

**5. Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

**a.** Repair or replace any part to restore the pair or set to its value before the loss; or

**b.** Pay the difference between actual cash value of the property before and after the loss.

**6. Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

**a.** Reach an agreement with you;

**b.** There is an entry of a final judgment; or

**c.** There is a filing of an appraisal award with us.

**7. Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**a.** Pay its own appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

**8. Other Insurance and Service Agreement.** If a loss covered by this policy is also covered by:

**a.** Other insurance, we will pay only the proportion of the loss that the limit of liability that

applies under this policy bears to the total amount of insurance covering the loss; or

**b.** A service agreement, the coverage provided under this policy is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**9. Suit Against Us.** No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

**10. Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**11. Abandonment of Property.** We need not accept any property abandoned by an "insured".

**12. Mortgage Clause.**

**a.** If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

**b.** If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

**(1)** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

**(2)** Pays any premium due under this policy on demand if you have neglected to pay the premium; and

**(3)** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

**c.** If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

**d.** If we pay the mortgagee for any loss and deny payment to you:

**(1)** We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

**(2)** At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

**e.** Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**13. No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**14. Nuclear Hazard Clause.**

**a.** "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

**b.** Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

**c.** This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**15. Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**16. Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

**17. Policy Period.** This policy applies only to loss which occurs during the policy period.

**18. Concealment or Fraud.** We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

**a.** Intentionally concealed or misrepresented any material fact or circumstance;

**b.** Engaged in fraudulent conduct; or

**c.** Made false statements;

relating to this insurance.

**19. Premises Alarm or Fire Protection System.** (Applies only if PROTECTIVE DEVICES CREDIT is shown in the Declarations.)

We acknowledge the installation of an alarm system and/or an automatic sprinkler system approved by us on the "residence premises". You agree to maintain this system or systems in working order and to let us know promptly of any change, including removal, made to the system(s).

---

## SECTION II - LIABILITY COVERAGES

### COVERAGE E - PERSONAL LIABILITY

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" is exhausted by the payment of a judgment or settlement.

### COVERAGE F - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2.  To a person off the "insured location", if the "bodily injury";

  a.  Arises out of a condition on the "insured location" or the ways immediately adjoining;

  b.  Is caused by the activities of an "insured";

c.  Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

d.  Is caused by an animal owned by or in the care of an "insured".

---

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1.  **Claim Expenses.** We pay:

  a.  Expenses we incur and costs taxed against an "insured" in any suit we defend;

  b.  Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage E limit of liability. We need not apply for or furnish any bond;

  c.  Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

  d.  Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2.  **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

3.  **Damage to Property of Others.** We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

    We will not pay for "property damage":

  a.  To the extent of any amount recoverable under Section I;

  b.  Caused intentionally by an "insured" who is 13 years of age or older;

  c.  To property owned by an "insured";

  d.  To property owned by or rented to a tenant of an "insured" or a resident in your household; or

  e.  Arising out of:

    (1)  A "business" engaged in by an "insured";

    (2)  Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

    (3)  The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

       This exclusion **e.(3)** does not apply to a "motor vehicle" that:

      (a)  Is designed for recreational use off public roads;

      (b)  Is not owned by an "insured"; and

      (c)  At the time and place of an "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used at the place of the "occurrence".

4.  **Loss Assessment.** We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

  a.  "Bodily injury" or "property damage" not excluded under Section II of this policy; or

  b.  Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

    (1)  Is elected by the members of a corporation or association of property owners; and

    (2)  Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

    Section II Condition **9.** Policy Period, does not apply to this coverage.

Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

---

## SECTION II - EXCLUSIONS

**A. Coverage E - Personal Liability and Coverage F - Medical Payments to Others.**

Coverages E and F do not apply to "bodily injury" or "property damage":

1. Which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

   a. Is of a different kind, quality or degree than initially expected or intended; or

   b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

   However, this exclusion **A.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property.

2. Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This exclusion **A.2.** applies to, but is not limited to, an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

   This exclusion **A.2.** does not apply to:

   a. The rental or holding for rental of an "insured location";

      (1) On an occasional basis if used only as a residence;

      (2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders;

      (3) In part, as an office, school, studio or private garage;

      (4) Shown in the Declarations as an ADDITIONAL RESIDENCE RENTED TO OTHERS; or

      (5) Shown in the Declarations as a STRUCTURE RENTED TO OTHERS.

   b. An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees; or

   c. One or more activities, for which no "insured" receives more than $2,000 in total compensation for the consecutive 12 months before an "occurrence";

3. Arising out of the rendering of or failure to render professional services;

4. Arising out of a premises:

   a. Owned by an "insured";

   b. Rented to an "insured"; or

   c. Rented to others by an "insured";

   that is not an "insured location";

5. Caused directly or indirectly by war, including the following and any consequence of any of the following:

   a. Undeclared war, civil war, insurrection, rebellion or revolution;

   b. Warlike act by a military force or military personnel; or

   c. Destruction, seizure or use for a military purpose.

   Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

6. Arising out of the transmission of a communicable disease by an "insured";

7. Arising out of sexual molestation, corporal punishment or physical or mental abuse;

8. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs

by a person following the orders of a licensed physician;

9. Arising out of, consisting of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot. This includes:

   a. The cost of testing, monitoring, abating, mitigating, removing, remediating or disposing of "fungi", other microbes or rot;

   b. Any supervision, instruction, disclosures, or failures to disclose, recommendations, warnings, or advice given, or that allegedly should have been given, in connection with "bodily injury" or "property damage" consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot, or the activities described in 9.a. above;

   c. Any obligation to share with or repay another who must pay damages because of "bodily injury" or "property damage" damage of the type described in this exclusion. This applies regardless of any other cause that contributed directly or indirectly, concurrently or in any sequence to the "bodily injury" or "property damage"; and

   d. Liability imposed upon any "insured" by any governmental authority for "bodily injury" or "property damage" consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot; or

10. Arising out of, resulting from, caused by or contributed to by the escape or release of fuel from a "fuel system". This exclusion applies but is not limited to:

    a. Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

    b. Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such "bodily injury" or "property damage", damages, loss, cost, payment or expense; or

    c. Any request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of fuel in any form.

    However, this exclusion does not apply to "bodily injury" or "property damage" arising out of fire or explosion that results from such escaped or released fuel.

11. Any loss, cost, payment or expense, including, but not limited to, defense and investigation, of any kind arising out of, resulting from, caused by or contributed to by the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead pigment, lead compounds or lead in any form which is or was contained or incorporated into any material or substance. This exclusion applies, but is not limited to:

    a. Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

    b. Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such "bodily injury" or "property damage", damages, loss, cost, payment or expense; or

    c. Any request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of lead, lead pigment, lead compounds or materials or substances containing lead in any form.

B. Coverage E- Personal Liability and Coverage F- Medical Payments to Others.

Coverages E and F also do not apply to:

1. "Motor Vehicle Liability" unless, at the time of an "occurrence", the involved "motor vehicle" is:

   a. In dead storage on an "insured location";

   b. Used to service an "insured's" residence;

   c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

      (1) Being used to assist a handicapped person; or

      (2) Parked on an "insured location";

   d. Designed for recreational use off public roads and:

      (1) Not owned by an "insured"; or

      (2) Owned by an "insured", provided the "occurrence" takes place on an "insured location" as defined in Definitions paragraphs 8.a., b., d., e. or h.; or

   e. A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

**(1)** A golfing facility and is parked or stored there, or being used by an "insured" to:

**(a)** Play the game of golf or for other recreational or leisure activity allowed by the facility;

**(b)** Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

**(c)** Cross public roads at designated points to access other parts of the golfing facility; or

**(2)** A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

However this exception to the exclusion from coverage does <u>not</u> apply if, at the time and place of an "occurrence", the involved "motor vehicle":

**a.** Is registered for use on public roads or property;

**b.** Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be lawfully used at the place of the "occurrence"; or

**c.** Is being:

**(1)** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

**(2)** Rented to others;

**(3)** Used to carry persons or cargo for a charge; or

**(4)** Used for any other "business" purpose except for a motorized golf cart used for incidental "business" entertainment while on a golfing facility.

**2.** "Watercraft liability" unless, at the time of an "occurrence", the involved watercraft:

**a.** Is stored;

**b.** Is a sailing vessel, with or without auxiliary power that is:

**(1)** Less than 26 feet in overall length; or

**(2)** 26 feet or more in overall length and not owned by or rented to an "insured";

**c.** Is not a sailing vessel and is powered by:

**(1)** An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

**(a)** 50 horsepower or less and not owned by an "insured"; or

**(b)** More than 50 horsepower and not owned by or rented to an "insured"; or

**(2)** One or more outboard engines or motors with:

**(a)** 25 total horsepower or less; or

**(b)** More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

**(c)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or:

**(d)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

**(1)** You declare them at policy inception; or

**(2)** Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in **(c)** and **(d)** above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

However this exception to the exclusion from coverage does <u>not</u> apply if, at the time and place of an "occurrence", the involved watercraft is being:

**a.** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

**b.** Rented to others;

**c.** Used to carry persons or cargo for a charge; or

**d.** Used for any other "business" purpose.

**3.** "Aircraft Liability".

**4.** "Hovercraft Liability".

Exclusions **A.4.**, **B.1.**, **B.2.**, **B.3.** and **B.4.** do not apply to "bodily injury" to a "residence employee" arising out



of and in the course of the "residence employee's" employment by an "insured".

**C.  Coverage E - Personal Liability**.

Coverage E does not apply to:

1.  Liability:

    **a.**  For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in Additional Coverage **4.** Loss Assessment;

    **b.**  Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

        **(1)**  That directly relate to the ownership, maintenance or use of an "insured location"; or

        **(2)**  In which the liability of others is assumed by the "insured" prior to an "occurrence";

        unless excluded in **a.** above or elsewhere in this policy;

2.  "Property damage" to property owned by the "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location".

3.  "Property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

4.  "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

    **a.**  Workers' compensation law;

    **b.**  Non-occupational disability law; or

    **c.**  Occupational disease law;

5.  "Bodily injury" or "property damage" for which an "insured" under this policy:

    **a.**  Is also an insured under a nuclear energy liability policy issued by the:

        **(1)**  Nuclear Energy Liability Insurance Association;

        **(2)**  Mutual Atomic Energy Liability Underwriters;

        **(3)**  Nuclear Insurance Association of Canada;

        or any of their successors; or

    **b.**  Would be an insured under that policy but for the exhaustion of its limit of liability;

6.  "Bodily injury" to you or an "insured" as defined in Definition **7.a.** or **b.**

    This exclusion also applies to any claim made or suit brought against you or an "insured":

    **a.**  To repay; or

    **b.**  Share damages with;

    another person who may be obligated to pay damages because of "bodily injury" to an "insured"; or

7.  "Bodily injury" to an "employee", "residence employee" or a temporary employee furnished to the "insured" to substitute for a permanent "residence employee" arising out of or in the course of the employee's employment by any Additional Insured named in the Declarations.

**D.  Coverage F - Medical Payments to Others**.

Coverage F does not apply to "bodily injury":

1.  To a "residence employee" if the "bodily injury":

    **a.**  Occurs off the "insured location"; and

    **b.**  Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2.  To any person eligible to receive benefits voluntarily provided or required to be provided under any:

    **a.**  Workers' compensation law;

    **b.**  Non-occupational disability law; or

    **c.**  Occupational disease law;

3.  From any:

    **a.**  Nuclear reaction;

    **b.**  Nuclear radiation; or

    **c.**  Radioactive contamination;

    all whether controlled or uncontrolled or however caused; or

    **d.**  Any consequence of any of these; or

4.  To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

## SECTION II - CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

   Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

3. **Duties After "Occurrence".** In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

   a. Give us written notice as soon as is practical, which sets forth:

      (1) The identity of the policy and the named "insured" shown in the Declarations;

      (2) Reasonably available information on the time, place and circumstances of the "occurrence"; and

      (3) Names and addresses of any claimants and witnesses;

   b. Cooperate with us in the investigation, settlement or defense of any claim or suit;

   c. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

   d. At our request, help us:

      (1) To make settlement;

      (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

      (3) With the conduct of suits and attend hearings and trials; and

      (4) To secure and give evidence and obtain the attendance of witnesses;

   e. With respect to Additional Coverage 3. Damage to Property of Others, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

   f. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

4. **Duties of an Injured Person - Coverage F - Medical Payments to Others.**

   a. The injured person or someone acting for the injured person will:

      (1) Give us written proof of claim, under oath if required, as soon as is practical; and

      (2) Authorize us to obtain copies of medical reports and records.

   b. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim - Coverage F - Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

6. **Suit Against Us.** No action can be brought against us unless there has been full compliance with all of the terms under this Section II.

   No one will have the right to join us as a party to any action against an "insured". Also, no action with respect to Coverage E can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

9. **Policy Period.** This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.



10. **Concealment or Fraud.** We do not provide coverage to an "insured" who, whether before or after a loss, has:

    **a.** Intentionally concealed or misrepresented any material fact or circumstance;

    **b.** Engaged in fraudulent conduct; or

    **c.** Made false statements;

relating to this insurance.

---

## SECTIONS I AND II - CONDITIONS

1. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions of coverage, whether that general program revision is implemented through introduction of:

       **a.** A subsequent edition of this policy form; or

       **b.** An amendatory endorsement

2. **Waiver or Change of Policy Provisions.** A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

   The coverage provided and the premium charged are based on information you have given us. You agree to cooperate with us in determining if this information is correct and complete and to inform us of any change in title, use or occupancy of the "residence premises".

   You agree that, if within 60 days of the policy effective date this information changes, is incorrect or incomplete, we may adjust your coverage and premium accordingly by giving you notice. This notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. The notice will contain the changed, incorrect or incomplete information along with the resulting premium change.

3. **Cancellation.**

       **a.** You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

       **b.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

         **(1)** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

         **(2)** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

         **(3)** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

           **(a)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

           **(b)** If the risk has changed substantially since the policy was issued.

         This can be done by letting you know at least 30 days before the date cancellation takes effect.

       **c.** We will also mail a copy of any notice of cancellation to any Additional Insured named in the Declarations.

       **d.** When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

       **e.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

4. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice. We will also mail a copy of the notice to any Additional Insured named in the Declarations.

HO-3  (10-06)

If we offer to renew and you or your representative do not accept, this policy will automatically terminate without notice of termination at the end of the current policy period. Failure to pay the required renewal premium when due shall mean that you have not accepted our offer.

**5.** **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

**6.** **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

**7.** **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

**a.** We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

**b.** "Insured" includes:

**(1)** An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

**(2)** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.



HO-312 (06-06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE
### ALL FORMS EXCEPT HO-4, HO-6 AND HV-6

Windstorm or Hail Deductible Percentage Amount: *

*Entry may be left blank if shown in the Declarations for this coverage.

**DEDUCTIBLE**

The following special deductible is added to the policy:

With respect to the peril of Windstorm or Hail, we will pay only that part of the total of all loss payable under Section I that exceeds the windstorm or hail percentage deductible.

The dollar amount of the windstorm or hail deductible is determined by multiplying the Coverage A limit of liability shown in the Declarations by the deductible percentage amount shown above. No other deductible in the policy applies to loss caused by windstorm or hail.

All other provisions of this policy apply.



HO-420 (06-06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL REPLACEMENT COST PROTECTION
**SPECIFIED AMOUNT**
(Applies only when loss to dwelling exceeds the
Coverage A Limit of Liability shown in the Declarations)

To the extent that coverage is provided, we agree to amend the present limits of liability in accordance with the following provisions:

**A.** If you have:

    **1.** Allowed us to adjust the Coverage A limit of liability and the premium in accordance with:

        **a.** The property evaluations we make; and

        **b.** Any increases in inflation; and

    **2.** Notified us, within 30 days of completion, of any improvements, alterations or additions to the dwelling insured under Coverage A which increase the replacement cost of the dwelling by 5% or more;

the provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged dwelling.

**B.** If there is a loss to the dwelling that exceeds the Coverage A limit of liability shown in the Declarations, for the purpose of settling that loss only:

    **1.** We will provide an additional amount of insurance up to _____%* of the Coverage A limit of liability; and

    **2.** Section I Condition **3.** Loss Settlement paragraph **b.** is deleted and replaced by the following:

        **b.** Buildings under Coverage A or B at replacement cost without deduction for depreciation. We will pay no more than the smallest of the following amounts for like construction and use on the same premises:

        **(1)** The replacement cost of that part of the building damaged with material of like kind and quality and for like use;

        **(2)** The necessary amount actually spent to repair or replace the damaged or destroyed building; or

        **(3)** The limit of liability under this policy that applies to the building, increased in accordance with Paragraphs **B.1.** and **B.2**. of this endorsement.

If the building is rebuilt at a new premises, the cost described in **(1)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.

You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to the dwelling on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability on a replacement cost basis.

*Entry may be left blank if shown in the Declarations for this coverage.

All other provisions of this policy apply.

HO-290 (06-06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT

**A. Eligible Property**

1. Covered losses to the following property are settled at replacement cost at the time of the loss:

   **a.** Property described in Coverage C; and

   **b.** If covered in this policy:

      **(1)** Awnings, outdoor antennas and outdoor equipment; and

      **(2)** Carpeting and household appliances;

      whether or not attached to buildings.

2. This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

   **a.** Jewelry;

   **b.** Furs and garments:

      **(1)** Trimmed with fur; or

      **(2)** Consisting principally of fur;

   **c.** Cameras, projection machines, films and related articles of equipment;

   **d.** Musical equipment and related articles of equipment;

   **e.** Silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware, but excluding:

      **(1)** Pens or pencils;

      **(2)** Flasks;

      **(2)** Smoking implements; or

      **(3)** Jewelry; and

   **f.** Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

**B. Ineligible Property**

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not

more than the amount required to repair or replace.

1. Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

2. Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

3. Articles not maintained in good or workable condition.

4. Articles that are outdated or obsolete and are stored or not being used.

**C. Replacement Cost Loss Settlement Condition**

The following loss settlement condition applies to all property described in **A.** above:

1. We will pay no more than the least of the following amounts:

   **a.** Replacement cost at the time of loss without deduction for depreciation;

   **b.** The full cost of repair at the time of loss;

   **c.** The limit of liability that applies to Coverage C, if applicable;

   **d.** Any applicable special limits of liability stated in this policy; or

   **e.** For loss to any item described in **A.2.a. - f.** above, the limit of liability that applies to the item.

2. If the cost to repair or replace the property described in **A.** above is more than $2,500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

3. You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.



HO-290 (06-06)

Page 1 of 1

This policy is signed for the company which is the insurer under this policy.

Wendy C. Skjerven
Senior Vice President and
Corporate Secretary

Michael Klein
President
Personal Insurance

**IN WITNESS WHEREOF, the Company has executed and attested these presents.**

PL-9107  8-97