IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) KENNETH TUROCZI and )
(2) TYRENE TUROCZI, )
  )
    Plaintiffs, )
  )
  )
vs. ) Case No.  5:23-CV-00095-JD
  )
  )
(1)  TRAVELERS COMMERCIAL )
    INSURANCE COMPANY, )
  )
    Defendant. )

### PLAINTIFFS' REPLY TO DEFENDANT'S OBJECTION AND RESPONSE IN OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

    This reply is made to that response of Defendant on April 3, 2023 in objection and response in opposition to Plaintiffs' second motion for leave to file an amended complaint in the above matter (hereinafter "the response" or "defendant's response").  Plaintiffs will, also, refer to the corporate Defendant as either that party or as "Travelers".

**I.  REPLY TO DEFENDANT'S INTRODUCTION.**

    For the most part, Defendant's Introduction accurately tracks the removal of this case under a diversity of citizenship jurisdiction and the subsequent order of this Court with regard to Plaintiffs' request to be allowed to amend the original State petition which was drafted in a notice pleading format, which is allowed by Oklahoma civil procedure, but which has been increasingly disfavored in the fact pleading standards as articulated by Rule 11, Fed.R.Civ.P. It was the Court's advisement to Plaintiffs in its Order (Dkt. # 10) that caused a much more detailed fact allegation to be made in Plaintiff's proffered amended complaint,  much of which

1

pleaded facts have neither been denied nor otherwise rebutted in Defendant's April 3, 2023 allegations of fact in its' "response and objection", which allegations that application of various statutes of limitation contained in Defendant's policy as well as in Oklahoma Law relating to the violation of its duty of good faith and fair dealing in the settlement of insurance claims makes the claim as pleaded barred by statute(s) of limitation.  Defendant's current response and objection, which is in essence a renewed motion to dismiss the amended complaint, similarly, raises not only the argument that the facts of Plaintiffs' amended initial pleading (i.e., the proffered amended complaint) are time-barred by applicable statute(s) of limitation, but also, because the claims are factually unsupported and that Plaintiffs cannot "plausibly plead a claim upon which relief can be granted".  (Dkt. # 18, p. 3)

## II. ARGUMENT AND AUTHORITIES.

**A.  Standard of Review**.  The parties agree that the standard of review is articulated in *Swanson v. Bixler,* 750 F.2d 810 (10th Cir. 1984) that all factual allegations are taken as true with "all reasonable inferences . . . indulged in favor of plaintiffs," *citing, Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976):

> "*W*hen a complaint and action are dismissed for failure to state a claim upon which relief can be granted, it must appear *beyond doubt*  that the plaintiff can prove *no set of facts* that would entitle him to relief."   (Emphasis added.)

Plaintiffs further in their amended complaint (Dkt. # 17-1, ¶10) raise the further standard of review that:   "Whenever in this Complaint  reference is made to any act, deed, or transaction of the defendant insurance corporation, this allegation means that it includes any of its' employees or agents  while they were actively engaged in the  management, di*rection* or *control*,  of the corporate entity's business  affairs."[n.1]

---

1- This standard is important, because the acts or omissions complained of herein arose not from the printed word of the subject policy and its additional coverages, but from the acts of certain employees or agents of Defendant in the application of that policy, which violate various statutory provisions of law governing the conduct of insurance claim settlement.

**B**.  **The claims established by the facts alleged in the proposed Amended Complaint are not time barred by applicable statutes of limitation.**

    *i*.   *Plaintiffs' Bad Faith Claim Is Not Statutorily Time Barred.*

Defendant begins this argument with an analysis of Oklahoma's two year statute of limitations for tort, including bad faith claims, *citing,* 12 O.S. § 95(3).  Dkt. #18, p.6.  It also notes that such statute begins to run when the cause of action "accrues", *citing, Stephens v. General Motors Corp.,* 1995 OK 114, 905 P.2d 797, 799, which accrual means when a litigant could first maintain an action to a successful conclusion.  Plaintiffs early on did, as stated above in page 6 of its' response, experience some inability to properly communicate due to several factors, including the loss of all their telecommunication service, less and except a "borrowed" work phone and Plaintiff Tyrene's vision impairment that necessitated text messaging which she could enlarge (with respect to received messages) and voice texting, which she could use to transmit messages.  The other communication difficulty referred to occurred at the very inception of the settlement process when both Defendant's adjusters Stokes and Monzingo experienced difficulty in contacting Plaintiffs. See. Dkt. # 17-1, ¶¶ 4 & 5.  Plaintiff Tyrene told Ms. Stokes, who first had difficulty sending email to the address *"*[punkphillyokc@gmail.com](mailto:punkphillyokc@gmail.com)*"*:

> "That's great now but nobody *texted* me the info,  I  *told   them  I*  **had no emai**l (because the fire had destroyed it)  ."..  (Emphasis added.)  *Id.,* ¶4.

The amended complaint notes the very same situation happened several days later with Mr. Monzingo, who had difficulty communicating via email to that same address:

> Plaintiff Turoczi:   "We only have his (Mr. Turoczi's) work phone and he has to clock  in to check his telephone messages so if  you could all text it would be great."
>
> Mr. Monzingo:  "OK, I'll let *them* (his manager Mr. Bogosh and other  employee personnel involved) *know*." (Emphasis added.) *Id.,* ¶5.

The significance of these two discussions is that  *each* of these adjusters was having the same communication difficulty,  but through no fault of their own.  The insured, when that fact

was made known to her in late December, 2018, explained to each adjuster the reason for their not having communication with their insured was that Plaintiffs did not have an email server that would receive messages on that address. The physical laptop server that contained that address was destroyed and if there was an alternate means to access that address, nonetheless the password was lost and any data that might be stored in it could not be accessed. Plaintiff gave these two adjusters the number of the work phone to use when they needed to contact Plaintiffs by text and communication was thereby restored between the parties. Mr. Manzingo, who was then the principal adjuster contact, said he would so advise all other Defendant personnel of the reason for Plaintiffs' need for texting and it is inferred that he did so. n. 2

      The Defendant next indicates that the claims process "occurred" during 2019 and early 2020. That is correct. However, to the extent this was meant to be the parameter of the claims process, Plaintiffs dispute that. This is because Defendant, while it made certain references to, e.g., the "2019 claims period" and the like, never advised Plaintiffs exactly what that description meant and/or the exact period of time that was intended to define as to when its' "claims period" settlement process" concluded. Such conduct of seeking to unilaterally define the truth of the "settlement period" itself without ever so notifying its' insured is in clear violation of 36 O.S. §§ 1250.1, *et. seq.* (hereafter "UCSPA"), and especially of Section 1250.5(1), which provides in pertinent part that:

> "Any of the following acts by an insurer . . . constitutes an unfair claim settlement practice: (1) Failing to fully disclose to first-party claimants . . . provisions of any insurance policy or insurance contract when the . . . provisions are pertinent to a claim;"

This provisio was used on numerous occasions, but it's exact meaning was never adequately

---

2- The second aspect of Mr. Manzingo's involvement is that he is the adjuster that initially advised the insured they did not have pet boarding coverage. While that caused some difficulty in Plaintiffs finding a habitat with animals allowed, when Mr. Asah Watts took over that position in early January, 2019 he did in fact confirm Plaintiffs did have such coverage, Defendant allowed pet boarding and indemnified Plaintiffs up to the policy's limits. Hence, this was and is not a part of their claim(s) against the company; and it was never considered a part of their bad faith claim.

explained to Plaintiffs, and in particular the date/time when the settlement process ended.  On at least one occasion when Mr. Watts was asked to explain what this "period" meant he failed, refused, neglected or was otherwise unable to do so.  Defendant uses several occasions when it might have begun and others (such as the sale of the home) when it might have ended in order to , but doesn't specify either.

XXXXXXXXXXXXXXX

Draft of Reply to Date, which Plaintiffs seek additional time to file of five days.
Defendant has been contacted and has no objection to this extension