# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) KENNETH TUROCZI and | ) | |
| (2) TYRENE TUROCZI, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| vs. | ) | Case No.  5:23-CV-00095-JD |
| | ) | |
| | ) | |
| (1) TRAVELERS COMMERCIAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT TRAVELERS COMMERCIAL  INSURANCE COMPANY'S MOTION TO DISMISS <u>PLAINTIFFS' AMENDED COMPLAINT</u>

### <u>EXHIBITS</u>

**<u>Number</u>**

| | | |
|---|---|---|
| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

Gary W. Gardenhire, OBA 3235
1005 Fountain Gate Circle
Norman, OK 73072

Tel.:      405-701-3398
Mobile:  405-574-0906
E-mail:    ggardenhire7@gmail.com

**Attorney for Plaintiffs,
Kenneth and Tyrene Turoczi**

## EXHIBITS

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
|---|---|---|
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

## TABLE OF CONTENTS

                                                                    **Page**

**I.  Response to Defendant's Introduction and Background  Statement**……….  **1**

**II.  Argument in Response to Defendant's Second Dismissal Motion.**

   **A.  Any addition of fact alleged to have been made in amendment
    pursuant to the Court's Order of March 1, 2023, Dkt. 10, p. 2, and
   does not constitute any act that was envisioned by the authors of
   Rule 41(b) that "allows" the same judicial official to dismiss a
   plaintiff's case from attempting to comply  with it's own order**.…………..… **7**

   **B.  A comparison of the proposed amended complaint with that
   filed does not show a  was other than to make certain wording more
   clear and understandable or to follow "complete difference" of
   allegations as the Defendant describes it, nor a change that
  \\ Fed. R. Civ. P. 11's guidance to employ fact pleading that would
   be sufficient plausible to state a plausible claim** ………….…..…………..… **11**

   **C. Plaintiff's pleadings, taken as true under the standard of review**
                                    0

## EXHIBITS

**Number**

| | | |
|---|---|---|
| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

the evidence offered by them to date, do state conduct which is
unreasonable and which violates the UCSPA, thus  establishes conduct,
which is afforded some form of relief under the Constitution of
Oklahoma rendering dismissal at this stage  inappropriate…..…………..… 19

**ENDNOTES:**………..…..……….…………….…..…………….……………..… 23

**-i-**

**III. PARTIES**……………………………………………………….…..……9

A. Plaintiffs…………………………………………………….……………… .9

B. Defendant………………………………………………………….………… ..10

**IV. JURISDICTION AND VENUE**…………………………………………….... 10

1

**EXHIBITS**

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
|---|---|---|
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

**V. FACTUAL ALLEGATIONS**……………………………………………….12

A.  Claim Initiation  and Estimation Period: DECEMBER 23, 2018 -*……….12

    B.  Mold.. Remediation . Period:  MAY 20,. 2019 - ** …………...………..…12

    C.  Reconstruction Election and Rebuild of Residence Period:
JUNE 24, 2019 – JUNE 18, 2022 ***….…………………..………………15

**.VI.   CAUSES OF ACTION AND CLAIM FOR RELIEF**……………………..   19

**EXHIBITS:**  The referenced Exhibits hereto were all previously provided to defendant as they had been referenced with the same Exhibit numbers as are used in this Amended Complaint document.  Those same numbered Exhibits  were provided to the Court via attached exhibits to undersigned counsel's Entry of Appearance sent by ECF transmission on March 20, 2023. On March 21, 2023 they are again sent with Plaintiffs proposed Amended Complaint. If any additional transmission of these exhibits are necessary, Plaintiff will comply with that directive.

_____

2

### EXHIBITS

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

-i-

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

|  |  |
|---|---|
| (1) KENNETH TUROCZI and | ) |
| (2) TYRENE TUROCZI, | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
|  | ) |

3

**<u>EXHIBITS</u>**

**<u>Number</u>**

| | | |
|---|---|---|
| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

vs.                                    )        Case No.  5:23-CV-00095-JD
                                       )
                                       )
(1) TRAVELERS COMMERCIAL              )
INSURANCE COMPANY,                     )
                                       )
        Defendant.                     )


PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT TRAVELERS
COMMERCIAL  INSURANCE COMPANY'S MOTION TO DISMISS
<u>PLAINTIFFS' AMENDED COMPLAINT</u>


   Come Now Plaintiffs Kenneth and Tyrene Turoczi (Plaintiffs or if singularly by their

given names) and for their response and objection to the motion to dismiss of Defendant,

Travelers Commercial Insurance Company, would  show the Court.

## I.   <u>Response to Defendant's Introduction and Background  Statement</u>.

   Defendant's introductory statement of this motion, as that of the same statement

accompanying its' first dismissal motion, invokes the numbered insurance policy and

4


<u>**EXHIBITS**</u>


<u>**Number**</u>

| | | |
|---|---|---|
| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

certain provisions of additional coverage.  Plaintiffs respond that the wrong(s) levied against them do not stem from the language or contents of the policy *per se,* but from the methods and manner in which the policy, including several additional coverages purchased, was applied in calculating the indemnification rightfully due to them.  Defendant begins, as before, by quoting the "compliance" provisio of its' policys' duty(s):

> 9. **Suit Against Us.**  No  action can  be  brought against us unless  there  has  been  *full  compliance*  with  all  of  the  terms under Section I of this policy *and* the  action  is  started   within two  years  after  the  date of loss. (Emphasis added.)  Dkt. # 26, p. 2.

From that notation Defendant's present motion continues to assert, as did its' initial  motion,  that  Plaintiffs'  had  "knowledge"  of  facts  supporting  unfair settlement at the time the claim was filed (Dkt. # 5, p. 8) by virtue of the animal coverage  denial,  even  though  no  claim  was  pursued  against  Defendant  for  the reason  that  it  *had*  changed  its'  position  and  *had*  paid  policy  limits  on  the  animal coverage  portion  of  the  policy,  which  resolved  any  issue  of  unfair  settlement

5

**EXHIBITS**

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

conduct stemming from the initial coverage denial.  In fact, as pleaded, the substance of the current claim stems from settlement conduct (alleged lack of notices to Travelers), which began in 2019, but was skillfully "hidden from" Plaintiffs until disclosed by current counsel Potts in her May 11, 2022 letter.  Thus, such withholding of facts affecting insured's rights of recovery violates the statutory language of 36 O.S. §1250.5(2):

> "Knowingly misrepresenting to claimants pertinent facts
> or policy provisions relating to coverages at issue;"

The "fact" of Defendant's reason for withholding its' decision to deny several coverages under its' purchased policy(s) is alleged to have occurred sometime *circa* June-July, 2019.  Defendants, however,  did not disclose this "important fact" reason(s), i.e.. non-coverage,  as per §1250.5(2) and did in fact mislead Plaintiffs, who continued their home's reconstruction for some time, until they  exhausted

6

### EXHIBITS

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
|---|---|---|
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

personal funds to continue their efforts and were forced to sell the residence for less

of an amount than it would have garnered if they had been able to complete its'

reconstruction.   Defendants in their motion argue this as another "trigger" that

Plaintiffs "knew" of bad faith.   Complainants have responded in their Amended

Petition that pleaded Defendant had "reneged", but only in the sense that Defendant

had not made *timely* payment, not that it had *ever* denied its' obligation to *ever*

make payment, which disclosure of decision it withheld until May 11, 2022. **n. i**

Plaintiffs  did *not* know such "final payment" fact  in 2019.  Therefore, with regard

to Defendant's argument   in support of dismissal of the initial pleading (State

petition):

> "it is irrelevant whether the plaintiff understood that the defendant's
> actions constituted a legal action *as long as the plaintiff knew of the
> facts* which could give rise to such a claim"    (emphasis added);

7

## EXHIBITS

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

there is no more relevant rubric of law applicable to this matter.  That is, because if Plaintiffs did *not* learn/know of either Defendant's intent or its 'basis of indemnity denial until much later in May 11, 2022, when those reasons were *first* explicitly brought into public knowledge by Ms. Potts' letter, disclosing to Plaintiffs for the first time the *basis* for its' earlier actions not to make payment of restoration expenses, that the statutory limitation period upon their alleged defense failure to give "notice" of reconstruction election  could be deemed to have begun.

As was with respect to Defendant's denial of the restoration costs, so too, was its' denial of payment under its' mold/fungi coverage, based upon assertions of failure to provide coverage by giving "prompt notice" of the condition. *n. ii* Ms. Potts  continued  that the policy's terms:

"  .   .  . make clear that Mr. and Mrs Turoczi were required to provide Travelers of ***prompt notice*** *of any claim for loss in order to trigger Travelers' duty* to provide coverage for that particular loss.  Because, no such prompt notice was provided (as

**EXHIBITS**

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

detailed above) and due to the significant prejudice to Travelers as a result of the failure to make such required prompt notice, Travelers is *not obligated to pay* any claimed loss related to the development of mold/fungi at the (property) . . .." (Emphasis added.)  *See,* Potts letter of May 11, 2002,.

For this reason Plaintiffs have argued in earlier briefs that the date the "trigger", as Defendant refers to it, actually occurred and statute(s) of limitation began to run was on May 11, 2022, when Defendant first publicized its' underlying decision that it had actually made *circa* June, 2019, **not** to pay any more loss indemnification and, also, when the *reason(s)* for this decision was first revealed/"known" to its' insured.    *See,* Dkt. # 17-1 ¶ 23 referencing Ms. Potts' May 11, 2022 letter stating  "reason" not to indemnify portions of the loss, which was Plaintiffs' alleged *failure* to "notify" of their election not seek total demolition and rebuild, but to reconstruct the damaged home.    *See also,* Plaintiffs' Amended Petition explanation Dkt. # 24,  which references five occasions when such notice was in fact given.  These will be argued, *infra.*

9

**<u>EXHIBITS</u>**

**<u>Number</u>**

| | | |
|---|---|---|
| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

Finally, in response to allegations in its' introductory paragraphs to this motion, Defendant also seeks a dismissal under Fed. R. Civ. P.  41(B) and LCvR15 as a violation of the rules of practice, largely upon the basis that the Plaintiffs filed what is described as an "altered" version of that offered to the Court in its proposed amended complaint.  To examine the bona fides of this allegation, what  must be remembered -- although it was not noted by Defendant in levying the allegation -- is the manner in which the amended complaint was brought about. *n.* iii  As set forth in this note, *immediately* after removal of the action Defendant almost contemporaneously filed a motion to dismiss the action based upon the State notice-pleading petitions' deficiencies:   (1) failure to commence the litigation within the applicable limitation period and (2) failure to plead a cognizable claim upon which relief may be granted.  It now has added a third allegation, i.e., a violation of LCvR15.1 in that the Amended Complaint differs from the proposed Amended Complaint submitted to the Court.    In their response to Defendant's first dismissal motion Plaintiffs

10

**<u>EXHIBITS</u>**

**<u>Number</u>**

| | | |
|---|---|---|
| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

had acknowledged that the initial pleading was not brought pursuant to Rule 11, but under the so-called "notice pleading" still accepted by Oklahoma Courts.  Plaintiffs  had stated, if necessary, they would amend to meet the federal pleading requirements.   Given Plaintiffs' statement in response (not to stand upon the state petition, but rather to amend) the Court allowed Plaintiffs to so amend.  Its' order  also instituted  settlement discussion and meetings. The Court instructed *both* parties regarding these discussions and their conduct.  Dkt. # 10, which will hereinafter be referred to as the "seminal procedural order" relating to this case.  The Court suggested Plaintiffs and counsel should consider Rule 11's obligations by, as  in *Id.*, p. 2, beginning to:

> " .   .   . *reasonably* .   .   . *determine*  ways to eliminate the alleged deficiencies .  .  . including by, for example **adding factual allegations** to state plausible claims." (Emphasis  added.)

Plaintiffs  have made  every  effort  to follow this suggestion by  employing  a more detailed  factual presentation  in  their  complaints.  But in doing so they have added a

**EXHIBITS**

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
|---|---|---|
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

number of areas of much more detailed fact (as the Court's above Order relating to Rule 11 specifically suggested) that had not been pled in the notice-style State petition.  One of these important set of facts was the situation that had arisen regarding the "effectiveness" of communication between the insured, in particular with Ms. Turoczi, and the adjusters managing the settlement for Defendant.   Plaintiff Tyrene, had experienced great difficulties in communicating with Defendant's representatives, because of the limited number of telecommunication devices available to them after the fire: only one mobile cellular phone loaned by Mr. Turoczi's employer in order that they would have the ability to communicate at all.   had repeatedly requested that contact on this telephone be made by text message, rather than by electronic mail, with which Defendant often would not comply. *See, e.g.,* Dkt.  # 24, ¶ 6.

In addition to the limited devices, Ms. Turoczi had many months before the fire begun to suffer from a vision loss/impairment for which she was receiving medical help, but

12

**EXHIBITS**

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

which was worsening.  That situation was made known to Defendant's adjusters including, especially, the need for a type of equipment which was *compatible* with her vision loss, e.g., text messaging via mobile telephone.  It was included in the amended complaints as per Dkt. # 10, because it is an important fact that directly addressed her vision medical condition and what type electronic communication was needed to accommodate her vision loss.  *n. v.*    Mr. Watts' reason(s) for denying/discouraging use of text messaging in its' settlement and his continued proselytism to use e-mail instead, which communication method he was advised of and  *knew* was not able to receive messages for his insured, remains unanswered.


**II.  <u>Argument in Response to Defendant's Second Dismissal Motion.</u>**

**A.  Any addition of fact alleged to have been made in amendment was made pursuant to the Court's Order of March 1, 2023, Dkt. 10, p. 2, and does not constitute any act that was envisioned by the authors of Rule 41(b) that "allows" the same judicial official to dismiss a plaintiff's case from attempting to comply with it's own order.**

13


<u>**EXHIBITS**</u>

<u>**Number**</u>

| | | |
|---|---|---|
| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

Defendant begins its' Part I(A) argument by stating:

> "The Federal Rules of Civil Procedure Rule 41 allows the
> Court to  dismiss a claim for *failure to comply with* federal
> rules ***or*** *court orders."*  (Emphasis added.)

 Defendant has misquoted  Rule.  41(b)'s dismissal authority, which states:

> "For failure of the plaintiff to prosecute ***or*** to comply with
> these rules ***or*** any order of court, a defendant may move for
> dismissal of an action or of any claim therein against him."
> (Emphasis added.)

Responding Plaintiffs, however,  agree with this emphasized statement of federal law, most

important of which is the presence of the disjunctive word "or".  The importance of the

correct quote is the third "or".  By virtue of the  complete language of the federal dismissal

rule its' plain language  demonstrates that these "failures" are truly *separate*, the commission

of any *one* of which would render a plaintiff's case subject to involuntary dismissal.  In this

removed matter and prior to the submission of their amended complaint Plaintiffs were

14

## EXHIBITS

**Number**

| | | |
|---|---|---|
| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

advised as a part of the Court's seminal procedural order  (Dkt. # 10), and as stated above,

that in their endeavors to respond under Rule 11 of the Federal Rules of Civil Procedure,

they *should* plead *factually* the events establishing viable grounds for civil recovery,  as

opposed to the notice pleading  initially employed when the matter was initially brought

under Oklahoma State pleading procedure.

Plaintiffs have in good faith attempted to plead in the manner  as suggested by the

Court.  Accordingly, Plaintiffs prepared and circulated a proposed amended complaint to

Defendant, who would not agree to its amendment. *See,* Dkt. # 23. Given that lack of

consent and pursuant to the Court's procedural order, Plaintiffs in the alternative sought

permission to submit an amended Complaint containing a sufficient fact allegation basis.

The parties had filed motions Dkts. ## 5 & 17, which were pending.  The Court's order of

April 17, 2023,  Dkt. 23   n. vi. provided for filing an amended complaint upon which filing

the pending motions would be terminated as moot without prejudice to Defendant from

15

**EXHIBITS**

**Number**

| | | |
|---|---|---|
| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

reasserting its' argument(s) for dismissal.  Plaintiffs timely filed their amended complaint, Dkt. 24, which the Court accepted as being timely filed in compliance with the Court's Order,  Dkt. # 25, but which Defendant now argues inserts "new matter" in violation of LCvR15.1  that differs from that in the  proposed Amended Complaint. Dkt. # 26, p. 5.

How it  "substantially differs" is described, *Id., at* Part B, of Defendant's motion, at numbered pages. 8-10. But the argument of procedural violation(s) in Defendant's latest motion to dismiss, Dkt. # 26, even though it does not as argued *supra* establish a meaningful "change or addition",  if found to be a violation of the local rule, does place Plaintiffs in a judicial sense in the proverbial idiom of being "caught between a rock and a hard place." Defendant's gambit is best demonstrated by it's own legal reference to the dismissal rule, by not giving allowance to the meaning of the emphasized wording of the disjunctive words "or".  It is settled in both Oklahoma and Federal law that words in a statute or other written law, *e.g.,* a regulation,  procedural rule or other like document such as here a trial court

16

## EXHIBITS

### Number

| | | |
|---|---|---|
| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

order, should be given their plain meaning and not be interpreted  to achieve some other meaning to defeat the written document's purpose.  *Brisco v. State ex rel. Bd. of Regents of Agric. & Mech. Colleges,* 2017 OK 35, ¶ 10, 394 P.3d 1251, 1254: *"If a statute"*  (and, therefore a legal document such as a court order) *"is plain and unambiguous,* it will not be subjected to judicial construction, but will receive the effect its language dictates."   Thus the emphasized words "or" in Rule 41(b)  establish each to be a separate duty "failure"  and mean that a plaintiff's complaint could be dismissed for failure to comply with any one stated duty.   Defendant contends that the filed document added "several   substantial additions and  changes which affect the claims and requests for damages in this case" and, therefore, a rule violation of LCvR15.1, which in turn and invoked Rule 41's dismissal powers. Dkt. # 26, p. 15.  Any changes and additions made by Plaintiffs were for the most part, as stated by Defendant,   to correct typographical errors or make certain sentence structural changes.   *Id.* Any other changes that were made by Plaintiffs were attempts to

17

**EXHIBITS**

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

make changes to their pleading for "structural" clarity or as suggested by the Court's Order. Dkt. #10 for better factual Rule 11 pleading.   This compliance with the court's order, however, resulted in the unfounded charge that it was a:  "*completely different* Amended Complaint than what was originally   proffered to opposing counsel and to the Court." (Emphasis added.) Dkt. # 26, p. 11.  Defendant goes on to assert that:

> these "numerous violations have caused great inconvenience, delay and expense" to it and that the "pleading stage of this case has been needlessly drawn out *since December of 2022* due to Plaintiffs' *inability to follow the procedural rules* set out by the Federal Rules and this Court".  (Emphasis added.) *Id.,* p. 12.

An examination of these assertions shows that Defendant has a proclivity to  "overstate" facts put before the Court, since the referenced "numerous violations" of the Fed. R. Civ. P. and the rules of this Court could not have been occurring in 2022 at all, as alleged, since the Removal to Federal Court was *not* made to this court until January 30, 2023.  But in fact,  Plaintiffs' counsel *did* violate federal civil procedure and local court rules when he

18

## EXHIBITS

### Number

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

did fail to enter his appearance *after* the removal.  This was counsel's fault, but was a result of a mistaken belief that since he was in the removed record as the Plaintiffs' counsel of record, he did not again have to file an appearance.  He was notified by the judge's present deputy after the case was transferred to this court and sent a form to enter appearance, which he immediately did, according to the court's order of 3/20/2023 (Dkt. #13) on that same date (Dkt. #14); note, this entry of appearance was stricken and replaced on the next day, not because of any violation of federal rule, but because of a need to be "flattened to optimize the CM/ECF display" and for no other reason. (Dkt. #14) Therefore, this violation of federal rule regarding appearance caused no delay whatsoever to Defendant in that it was done on the same day as the order, because of Plaintiffs' compliance, without involving Defendant's counsel at all. Thus, there was no legal expense because of this "violation".  Similarly, with respect to the other violations by Plaintiffs filed in response to Travelers' dismissal motion,   Dkt. # 10, page 1, they

19

**EXHIBITS**

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
|---|---|---|
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

corrected all three rule violations, the first by submitting a motion to amend complaint,  as authorized  in the order, *Id.,* that *did* carry an electronic signature of counsel; the second in that Complainants, did include an indexed table of contents to the refiled motion; and the third by not joining that motion with a response brief.   The motion also attempted to comply, as is stated above, by adding factual allegations that had stated plausible claim(s). These corrections, too, did not require the legal involvement of Defendant, as all of the court's required corrections were accepted and promptly made by Plaintiffs, ultimately resulting in the Court's 4/17/2023 order (Dkt. # 25) that an amended complaint  (Dkt. # 24) had been timely filed "in compliance with this Courts order .  .  under Federal Rule of Civil Procedure 81(c)(2)".  Defendant's response in opposition to the motion (Dkt. # 18) would have been made irrespective of any rule violation by Plaintiffs. Therefore, these violations did not increase its' legal costs as alleged in the motion and did not significantly extend  litigation time, as Plaintiffs corrected all of them soon after the order was made.

20

**EXHIBITS**

**Number**

| | | |
|---|---|---|
| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

**B.  A comparison of the proposed amended complaint with that filed does not show a was other than to make certain wording more clear and understandable or to follow**

**"complete difference" of allegations as the Defendant describes it, nor a change that Fed. R. Civ. P. 11's guidance to employ fact pleading that would be sufficient plausible to state a plausible claim.**

Commensurate with the Court's Order, Dkt. 10,  pp. 2-3, Plaintiffs did circulate a proposed amended complaint, Dkt. 17-1, describing the amendment and its' fact pleading according to a Rule 11 format.  With respect to the later filed Amended Complaint, Dkt. # 24,  Plaintiffs did make a number of changes,  which "differences" Defendant "discovered (were) nearly 400".  Dkt. # 26, p. 15.  However,  as Defendant states, these were primarily to correct typographical errors or make certain sentence structural changes (which sometimes was a slight change in wording) which, as Defendant correctly states, was "to make it more readable or explanatory." *Id*.  Defendant, however,   also alleged several "substantial" additions and changes, "which affect the claims and  damages in this case."

21

### EXHIBITS

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

*Id.* Plaintiffs will address these additions and their effects, if any, upon damages, even assuming, *arguendo,* that Local Rule LCvR15.1 "prevents" their inclusion.

(1) An area, *a*lleged by Defendant to be an addition or change to the Proposed Amended Complaint Dkt. # 17-1 and a violation of Local Rule LCvR15.1, related to of the filed Amended Complaint, Dkt. # 24. Defendants complain it "contained 15 lines of additional text",  Dkt. # 26, pg. 15,  but it does not explain what these lines did to alter or add any factual allegation, because they did not, nor did it explain how it affected the claims for damages against it.   The worst thing that can be said is that it is mere surplusage, because the Court's orders did allow Plaintiffs to plead a contract violation to help establish a bad faith claim.    The Amended Complaint filed on 3/21/2023*, Id.,* did contain fifteen additional lines.  The reason  was not to change any fact that had been previously made or add any claim, but as stated in the added lines to address (and agree with!)  legal authority that had been raised after the proposed Amended Complaint had

22

**EXHIBITS**

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

been filed.  *See,* Dkts. ## 17 (Attach. 1) & 18.  Defendant had asserted in its' response  to

the Second Motion To Amend (Dkt. # 18) the case of  *Addudell  Lincoln Plaza Hotel v.*

*Certain Underwriters of Lloyd's of London,*  215 OK CIV APP 34, 348 P.3d 216, which

notes  at its' ¶¶ 26 and 27  the UCSPA  (the "Act"), which citation, as stated,  followed

Plaintiffs' filing of its' Proposed Amended Complaint (Dkt. # 17-1). This case's finding

selected by Defendant provides that the Act:

> ".  .  . may provide guidance to a trial court in determining whether to grant
> summary judgment, but it does not function as an appropriate guide for a jury
> to determine bad faith.

It was addressed in the Amended Complaint, because it showed, along with Plaintiffs' cited

authority,  that while the Act did not in and of itself provide a private cause of action it could

be used by a Court, as here in a motion of disposition and as stated in both Defendant's cited

authority *Addudell, Id*., and in Plaintiffs' authority   *Beers v. Hillory,* 210 OK CIV APP 99,

241 P.3d 285,   to provide  the Court  guidance  in determining  violations  of its provisions

23

**EXHIBITS**

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
|---|---|---|
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

*sufficient to form the basis* of bad faith.    *No* Oklahoma authority holds that, as here in a

motion of disposition, violations of the Acts standards may *not* be used as guidance to go

forward  to determine if bad faith (unreasonable conduct by an insurer) exists.  If the Court

determines that there is such a basis of proof of unreasonable conduct, then in that event the

issues of appropriate remedies and whether there is sufficient evidence under standards of

review to make it an issue for a jury to determine, may be addressed.  But the Defendant's

early dismissal motion would prevent those and other determinations from ever being made.

Plaintiffs have already  pled extensive facts and given evidence of the Act's relevance to

these issues, which contradict such "defenses" as statutory limitation,  Plaintiffs' alleges

failure to give either  required and/or a "timely" notice, etc.  References to it were not made

to provide a remedy, per se, but that a basis  of bad faith conduct *is* pled.

   (2)   Another  area, which was alleged by Defendant to be an addition or change to the

proposed amended complaint Dkt. # 17-1, violating Local Rule LCvR15.1, was the alleged

24

**EXHIBITS**

**Number**

| | | |
|---|---|---|
| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

five listed ways Defendant was notified of the election to reconstruct the damaged resident and which was made well within the "settlement period", however it is defined by Defendant.   Dkt. # 26, p. 15.  It is this itemization that is asserted to be a "change" that "affect the claims and damages in this case."

Defendant first compares the number of lines in Plaintiffs' numbered paragraph 23 of its' Amended Complaint and stated that the filed Amended Petition  contained thirty-two "extra" lines  of "factual allegation of five separate events" that gave Defendant notice of the reconstruction election.  *Id.* That, too, is a correct statement.  However, what it incorrect is Defendant's inferences that the extra lines were somehow new facts or changes that are not made in the Proposed Amended Complaint Dkt. # 17-1.  They are just the opposite, because all evidence/proof *did* occur and was included in the proposed pleading, *Id.*, and further as the evidence *was* pled had previously been made known to the Defendant.  Therefore, this was merely a structural change   designed to  "bring together"  what  had

25

**EXHIBITS**

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

been pled and be presented  in a more understandable form in this very extensive and diverse body of relevant facts as an evidential challenge to Defendant's repeated assertions that it had *not* been notified of Plaintiffs' election to reconstruct.  n, vii. Defendant should acknowledge Plaintiffs' initial reference to the proposed amendment document, Dkt. # 17-1's numbered paragraph's "17' through "21". Dkt. # 24, p.21 .These separate acts were all *made known* to Defendant and contained in the  proposed amended pleading'. Taken together  they belie any assertion of a lack of reconstruction notice. This display shows the various  notices, when and how  they  occurred, and their message that implied an election.

| Dkt. # 17-1's ¶# | Date(s)/Period | Type/How Made | Content/Message given |
| --- | --- | --- | --- |
| ¶17- Dkt. p.17 Relates to **"Event 1"** Def. 's Motion Dkt, # 26. | May-June, 2019 | Text message, telephone discussions. | P. Tyrene had advised of the hiring of mold expert to determine habitability of restoration. *See,* Ex. 4, text message. |

26

**EXHIBITS**

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| --- | --- | --- |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

| | | | |
|---|---|---|---|
| *Id.,* but relating to **"Event 2"** of Def. 's Motion Dkt. # 26. | *circa,* late June, 2019. | Telephone calls & hand delivery of mold & structural expert's reports to offices of **both** Watts & Timberlake. | Report of both experts *establishing* habitability w/ mold pictures attached, giving the Defendant "actual knowledge" of mold's presence____ |
| *Id.*, but relating to **"Event 3"** of Def. 's Motion Dkt. # 26. | *circa,* late June, 2019. | Telephone calls & hand delivery of the building permit for a residence | Contents of messages; OKC permit, which will be furnished by separate filing____. |
| *Id*, but relating to **"Event 4"** of Def. 's Motion/Dkt. 26 | *circa,* late June, 2019. | Telephone calls & permit delivery. | Contents of messages of the OKC  permit. |
| <u>Dkt. # 17-1's ¶#</u> *Id*, but relating to **"Event 5"** of Def.'s Motion Dkt, # 26 | <u>Date(s)/Period</u> *circa,* late June, 2023 thru AUG 2023 | <u>Type/How Made</u> Telephone calls, & photographic<br><br>*See,* Exhibit  3, ## 3, 4, 5 & 6 | <u>Content/Message given</u> Actual notice of the election to reconstruct given to Watts. by text message, incl.  referenced  photographs showing the  beginning and continuation |

27

**EXHIBITS**

## **Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
|---|---|---|
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

of reconstruction of
the residence.

_____

In summary, this schematic illustrates that this information, which was originally described in the Proposed Amended Complaint (Dkt. # 17-1, p. 17 and following) and which alleged the retaining of the mold expert (whose lengthy report, Exhibit 6 hereto) was given to both Watts and Timberlake in late June, 2019 when received, as well as that of the structural engineer report (Exhibit 7  hereto), which had been received a few weeks before, together with the Oklahoma City building permit. Seveal of these acts alone are sufficient to meet the policy's "notification" requirement of an election to reconstruct the severely damaged as originally stated in the proposed complaint, *Id.*  But further,  it not only started in June, 2019, but continued well into August, 2019, and multiple statements for payment for the work were, also, hand delivered and/or mailed to both Watts and Timberlake both of whom, unquestionably, had knowledge of the "election" even before Ms. Timberlake's oft-

28

**EXHIBITS**

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

cited July, 2019 "final" letter.  This final letter,  again was allegedly sent by regular mail,

notwithstanding Plaintiffs' earlier, repeated requests be sent by some form of certified mail,

because of the non-delivery problems of regular mail in the area that Plaintiffs had

experienced at their temporary residence, including that earlier sent by Defendant.  It was

also allegedly sent by email, which as has also been argued earlier, to an address that Ms.

Timberlake,  to whom Mr. Watts reported, knew or should have known was not  a

deliverable electronic address. Given the *many* ways Defendant had been notified of

Plaintiffs' election, especially *after* rebuilding began, to continue to engage in claims

settlement based upon an assertion of the lack of such "election" notification is not just

"unreasonable" conduct, it is  ridiculous  and violates the clear public policy of  the Act.

The five questions Defendant claims that are a basis to allege a violation of LCvR15.1,

stem from a lengthy fact statement in the proposed complaint Dkt. # 17-1, ¶¶17- 21, as is

noted at Dkt. # 24, p. 21, and are nothing more than a summary of those allegations.

29

**EXHIBITS**

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
|---|---|---|
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

LCvR15.1, as Defendant states prohibits *inter alia* the "differing" of an Amended Complaint from that proposed to the Court.   Query,  how does a summary of extensive facts in the actual filed complaint "differ" from the document it summarizes?  Answer:  it does not!  Such summary should be held as a matter of law to not violate the local rule and is clearly *not* the basis for a Rule 41 dismissal.   Last, with regard to this issue, Plaintiffs respond that the summarized lines are "not disputed",  because Defendant in no way showed how a summary could differ from pleaded facts in a proposed amendment. Plaintiffs ask that it clarify this statement by asking that the following questions be answered in reply:  (1) Does Defendant dispute that Plaintiffs hired a structural engineer or a mold remediation expert in the stated time period or that he did not so advise Defendant? (2) Does Defendant dispute that Plaintiffs furnished Defendant with these experts' findings *circa* late June, 2019 or that these findings were that reconstruction could be accomplished only after complete mold remediation? (3) Does Defendant dispute that Plaintiffs, also,

30

**EXHIBITS**

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

furnished Defendant with a copy of a building permit from the Oklahoma City Development Services relative to the damaged property?  (4)  Does Defendant dispute that Plaintiffs provided these documents  to either Mr. Watts or Ms. Timberlike or both? (5) Does Defendant dispute that Plaintiffs commenced reconstruction of the subject property on or about the stated date of June 24, 2019 or that Plaintiffs notified agent Watts of that fact?   (6)    Does Defendant dispute that Plaintiffs after reconstruction began sent photographs showing the progress made to Defendant /or did not do it when stated? Or (7)  Does Defendant dispute that Plaintiffs in the above time period delivered or provided Defendant with copies of billing statements and/or material?

As argued, infra, these allegations and others supposedly constituting a violation of the local rule do not exist.  Defendant concludes the  LCvR15.1 violation by asserting the "editing" of the Causes of Action and Claim for Relief section.  The first "edit" was the "concern" that having referred to it is that having labeled it as an "action in tort" it

31

**EXHIBITS**

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

was changed to read that it was changed to read that the Act's violation "establishes a contract breach" and can be used to "determine if an insurer's acts were or were not reasonable."  That was a correct statement, but it was done, because the very authority Plaintiffs had used:  *Beers v. Hillory, supra,* can be used  by a Court in a civil action to determine if an insurer's conduct constitutes bad faith on account of the violation of the acts standards.  In accord is the  *Addudell* cited by Defendant.  What is Defendant's concern is not understood.  The remedy question is raised, but apparently cannot be answered until Defendant's conduct, which is now not only pleaded, but partially proved by Plaintiffs' submission of documents and exhibits.  The second "concern" relates to descriptions relating to the ADA Claim changing "*reasonable* accommodation" to "*reasonable* modification of process".  The reason is that it is the more accurate description of the remedy afforded under Title III by 42 U.S.C, § 121829(a) & (b)(1)(D).  Changing the ADA's remedial terms ("accommodation" is something  *e,g,* a business

32

**EXHIBITS**

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

gives to a disabled person, whereas a "reasonable modification" is the method and manner in which it does so) to more correctly state that remedy is in no way a violation of LCvR15.1 and the attempt to make that another "violation" of the local rule is specious, but just another gambit to obtain a Rule 41 dismissal.

**C.   Plaintiff's pleadings, taken as true under the standard of review and given the evidence offered by them to date, do state conduct which is unreasonable and which violates the UCSPA, thus  establishes conduct, which is afforded some form of relief under the Constitution of Oklahoma rendering dismissal at this stage  inappropriate.**

Defendants assert the Plaintiffs' claim to be time barred as they "remain time barred" and "thus" the Amended Complaint does not state a claim for which relief may be granted. Dkt. # 26, p. 17.  It, also asserts that the breach of contract claim is further subject to dismissal, because it is "predicated upon the UCSPA." Id., p. 25.  Defendant's have cited authority that Plaintiff's have plead the "contract" is void.  What Plaintiffs have repeatedly stated that it is not the contract  policy that is void, but rather, the manner of its application,

33

**<u>EXHIBITS</u>**

**<u>Number</u>**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
|---|---|---|
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

*See,* Dkt. # 24,  p. 14, ¶12.  Can a business, which applies a contract in violation of the law,

shield itself from access to the courts by stating that where there is no law  to redress that

violation upon its rights, there is *no* law to which it turn, except as here the administrative

agency of the Oklahoma Insurance Commission?  That is exactly What Travelers urges.

If that is really the Insurance industry's "law", does that law violate the Constitution of

Oklahoma, *e.g.,* Okla. Const., Art. 2, § 6, which provides:

> The *courts* of justice of the State **shall** *be open to every person*, and speedy
> and certain *remedy afforded for every wrong and for every injury to person,*
> *property,* or reputation; and right and justice *shall be administered without*
> sale, denial, *delay*, or prejudice. (Emphasis added.)

What Travelers urges in the factual circumstances of this case is that this  plainly worded

constitutional provision does not apply, or that it  does not exist when the "wrong" is

committed by it through its employee's conduct in the wrongful application of its policy

or that such acts or omissions  of settlement conduct is not a legal "wrong" when the

34

**EXHIBITS**

**Number**

| | | |
|---|---|---|
| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

insured suffers *any* injury from its conduct.   "Sorry Mr. or Mrs. Turoczi, Oklahoma's court doors are closed (not *open* as the Constitution states); you'll just have to go to the Oklahoma Insurance Commission  .   .   . it's the *only* judicial redress you have!"

The problem is that Oklahoma's settled law for over a century has rejected such "analysis" as Travelers has urged this Court to adopt.  In *Davis v. Thompson,* 1986 Okla. 38, 721 P.2d 789 (Okla. 1986), Oklahoma's  Supreme Court relied upon several canons of constitutional  construction to reach its' verdict.  Citing, earlier authority which reached back to 1889, the date of the founding of the Oklahoma Territory, *Davis* stated:

> "The object of construction applied to a Constitution, is to give effect to the intent of its framer, and of the people in adopting it.  This intent is to be found in the instrument  itself; and when the  text  of a  Constitutional  provision  is not ambiguous, the Court's in giving construction thereto, are *not at liberty* to search for its meaning beyond the instrument.  (Emphasis added.)

> To get at the thought or meaning expressed in a statute, a contract or a Constitution, the first resort, in all cases, is to the natural signification of the

35

**EXHIBITS**

**Number**

| | | |
|---|---|---|
| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

words, in the order grammatical arrangement in which the framers of the instrument have placed them.  If the words convey a definite meaning, which involves no absurdity, nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted, and neither the courts nor the legislature have the right to add to or take from it.

This case is one in which acts the Defendant has engaged does trigger this issue, first, to determine if an act is  unreasonable act and if it does, then "go forward" to determine proper "remedies" to redress those offenses against one of its' insured.  Neither Courts nor the State Legislature may avoid that obligation, as is stated in  *Beers v. Hillory, supra.*  To fail, at least, do to that would seemingly violate the clear language and meaning of Okla. Const, Article 2, § 6, above.   A second reason exists.

As has been shown in analysis of fact, since inception of the claim, Defendant has responded that there to was *no* timely notice of a mold condition ever made.  In their Second Motion for Leave to File Amended Complaint, Dkt. # 17-1, Plaintiffs identified at

36

**EXHIBITS**

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

least four occasions during the "Mold Remediation Period" when timely notice was given including three text advisements and one telephone advisement, but Defendant has continued to deny that such timely notice ever existed.  Plaintiffs now offer Exhibits 1, 2 & 5 to this response  that such notice was in fact given, including a pleading response that a fourth, by  telephone, which the Court must accept in the Standard of Review of a Motion to Dismiss was given.  What this stands for is that both  Defendant and its' legal counsel Ms. Potts (who made this same denial in her May 11, 2022 letter) have made false representations with respect to their duty's of fair treatment owed to an insured, which should take it our of the "lack of jurisdiction of the Courts" argument and authorities, that it has asserted in the present case.  Plaintiffs assert that this conduct removes it from  the multiple authorities Defendant asserts and *does* under the authority of Okla. Const., Art. 2 , § 6, place it before this Court's jurisdiction, because of diversity of citizenship, where it should remain and the dismissal motion should, accordingly be denied.

37

**EXHIBITS**

**Number**

| | | |
|---|---|---|
| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

Respectfully submitted,

/s/  *Gary W. Gardenhire*_____

Gary W. Gardenhire, OBA No. 3235
Attorney for Plaintiffs
1005 Fountain Gate Cir.
Norman, OK 73072
Tel.: 405-701-3398
E-mail: *ggardenhire7@gmail.com*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of May, 2023, a true and correct copy of the above and foregoing Response  document was served upon the following persons via the Court's electronic mail filing system  (ECF) to:

Sara E. Potts
Doerner, Saunders, Daniel, *et al*
210 Park Avenue, Suite 1200
Oklahoma City, OK 73102

-and-

38

## EXHIBITS

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
|---|---|---|
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

Michael S. Linscott
Alexandra J. Gage
Williams Center Tower II
2West Second Street, Suite 700
Tulsa, OK 73403-3177

_/s/  Gary W. Gardenhire_

### _Endnotes_

*n.* i  Defendant has made earlier argument that Ms. Timberlake's July 22, 2019 written letter was such a"final" notice, but ignores the pleaded fact that her notice was mailed by regular mail and not as requested by verifiable delivery  (which temporary address had caused Defendant to previously experience its' mail not to be able to be delivered there).  Ms. Timberlake also sent the letter by electronic mail, but to an address she had actual notice some six months earlier in the claim period that it was not deliverable to the receiver, because the e-mail address was on a computer that had been totally ruined in the fire and the address had a password that had been lost and could not be accessed even if *arguendo* the computer could be physically accessed.  *See,*  Dkt. # 22, pp. 3 - 4:  principal adjuster Monzigo's assurance to let all other agents involved "know" of Plaintiffs' explanation of their emails' inability to communicate, which inferentially he did!

ii.  The presence of growing mold was made known to Asa Watts on several occasions *circa* February - June, 2002, by both  Plaintiffs;  Watts took no actions of remediation or prevention, stating only that the "demolition (of the home) would take care of it".  It was Watts' failure to take any action that caused Plaintiffs to retain at their own expense both a mold expert and a structural engineer  to determine if the residence could  be repaired to habitability.

### EXHIBITS

#### Number

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
|---|---|---|
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

*See,* Dkt. # 24, pp, 16-18 and paragraphs numbered 14, 15, 16, 17 and 18 and *see also,* Exhibits 1, 2, and 3 to this Response

iii.  The initial filing in Oklahoma County District Court was 12/ 21/ 2022, (Dkt. # 1,  Ex. #2);  the date of removal to this Court was 1/30/2023, *Id.* # 1; Defendant's motion to dismiss the removed State petition was filed with exhibits on 2/6/2023, (Dkt. # 5);  a response in opposition  with exhibits had been filed by Plaintiffs on 2/27/28 (Dkt. # 7), but the assigned judge had recused on 2/28/2023 ( Dkt. # 8) and on the same date the claim had been reassigned to this Court. (Dkt. # 9).   The present court's March 1 order regarding settlement conferences, procedures for each party's counsel to follow, reports, and Plaintiffs' request to amend the state petition pleading.

 iv.  Notwithstanding these requests for a settlement process modification to assist with  Plaintiff Tyrene's vision loss and often inability to read and understand Defendant's lengthy documents, such as their Exhibit #1 policy and other comparable documents, Defendant continued to deny on numerous occasions, communication by text messaging. Following his letter of 2/8/2019, Mr. Watts in a telephone conference with Plaintiff Tyrene was even less agreeable to offer any modification / accommodation.  First, Watts reiterated the letter's verbiage that electronic communication by text (which had been labeled as her "preferred method") had not "helped" to continue to move the claim forward.  How texting hindered claim settlement he again did not, would not or could not explain.  He did state that moving forward Ms. Timberlake would be their contact.  He also stated he would *not* communicate via text, although it should be noted he did so on sporadic occasion, *e.g.,* Plaintiff's  Ex. 4 to Dkt. # 24, requesting use of the "punkphillyokc@gmail.com" as the delivery address for documents, even though he, too,  had been repeatedly advised it was not workable and thus  not a "valid" address to use.

v.  The deterioration in Plaintiff Tyrene's vision had begun *early in* 2018 and had worsened up to and after the fire on and through 2019 when she requested Defendant, primarily through Mr. Watts , and on numerous  occasions to use a text electronic communication service or if by mail via FEDEX or some like restricted delivery service with a "signature verification of delivery " requirement, due to previous failures of  Defendant's delivery by regular mail. *See, e.g.,* Dkt. # 24, Ex. No. 4, *two* requests for text communication made on June 24, 2019, the date *visible* reconstruction work began.  The Defendant ignored this request, as it had earlier ones.  The vision loss  is, perhaps one of the "additions" of fact that the Court suggested in its Order, Dkt. 10, but which Defendant now decries as a violation of  LCvR15 and repeatedly attributes unethical conduct to counsel for following the Court's above order regarding pleading and  to also act in "good faith".

40

## **EXHIBITS**

## **Number**

| | | |
|---|---|---|
| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |

vi.  The submitted amended complaint Dkt. # 24 filed on April 24, 2023, met with the Court's pleading requirements.  *See,* Order,  Dkt. # 25.   This was the basis for the earlier motions to be stricken without prejudice.

vii.  It is somewhat strange that Defendant would understand the attempted simplification in her prefatory remarks, *Id.,* but raise another procedural infirmity in one of the most crucial issues in the case, *i.e.*, the lack of payment for reconstruction costs due to failure to make notification as required by the policy.

41

**EXHIBITS**

**Number**

| 1 | 02/15/2019 | Text from adjuster Watts to Plaintiff Tyrene; discussion about including mold in the loss estimate. |
| 2 | 04/18/2019 | Text discussion between Plaintiff Kenneth about mold remediation by Travelers. |
| 3 | *circa* Ju;y, 2019 | Photographs of residence reconstruction and progress. |
| 4 | June - July 2019 text re  claim file | Discussion between Plaintiff Tyrene and Watts, |