**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1)  KENNETH TUROCZI   and | ) | |
| (2)  TYRENE TUROCZI, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 5:23CV-00095-JD |
| | ) | |
| (1)  TRAVELERS COMMERCIAL | ) | |
| INSURANCE COMPANY. | ) | |
| | ) | |
| Defendant. | ) | |

<u>PLAINTIFFS' COUNSEL'S MOTION TO WITHDRAW REPRESENTATION</u>

Comes Now  undersigned counsel for Plaintiffs,  above, and pursuant to the provisions

of  29 CFR  18.22 (e), makes application to the Court for its' permission to withdraw as

counsel of record for Plaintiffs.  In support, movant would show the Court that notice of

this motion  has been verbally made to both parties and they have no objection hereto, but

only request that sufficient time to obtain new counsel be given, and by virtue of which

movant hereby makes that request to this Honorable Court.

Movant would further show the Court that the basis for this motion is that it is a

"mandatory withdrawal" in that its' counsel is and has been for the last twenty years  in an

increasingly *physical* state that now for the first time it has  been  shown to him to have

seriously impaired his knowledge of and ability to continue   a sole-proprietor attorney

representation status.  *See, note 1,*  which  describes the  movant's current  condition and

1

how it came about.   And   *c.f., also*, Rule 1.16(a)(2) of the Model Code   of   Rules of Professional Conduct, which states the   *obligation*   to notify of the presence of a physical impairment that may affect counsel's representation, which impairment began to be evidenced with respect to this present representation in May, 2022.   Movant would, also, show the Court that until recently movant has been able to maintain this "sole-proprietorship" status *and* meet his ethical requirements. But now, due to this case's demands of time and the attendant stress placed upon him, it is in his opinion unable for him to both avoid such excessive work-related stress and at the same time meet his' ethical obligations.   Plaintiffs have been unable to provide additional assistance to lessen this stress and the physical impairment it has created.     This impairment is evidenced by movant's May, 2023 advice of his local cardiologist to seek admission to the Norman Regional Hospital's ER, which disclosed yet *another* new physical condition advised to be a "non-vertigo" disorder. That bodily impairment prevented the performance of several full days of  work and impaired some of the quality of work that was done.

These other related conditions of stress  were  almost identical to those experienced in  Spring  of 2003, when movant was recalled to active U.S. Army duty in the 75th Division's  training of Reserve Army units for Operation Iraqi Freedom.   The stress and work hours of this duty were very similar to those of his present work effort.   Movant first met with the late Dr. S. Ward Casscells after  movant  was assigned by the Commanding General to meet with the doctor on a proposed sale of the Houston Division headquarters building to  the nearby University of Texas Health Science Center  S*ee, note 2.*

When movant returned from active duty he was employed in a state agency's much

less stressful legal division.   After he later returned to private litigation practice movant did, however, remember the doctor's advise and did significantly reduce the time he spent on such work. *See, note 3.*   He seldom engaged in the intensive type of litigation as that of this case and if he did was assisted by at least one or two additional litigators.   But when movant worked long hours and six days (occasionally seven) a week, and subject to many occasions of the work's stress as the Division's G-2 Intelligence Officer (which included daily reading of classified reports that might affect the security of the reserve training missions in which the Division was involved and summarizing this intelligence for the General's daily briefing), he *had experienced* these same kind of bodily impairments as the current ones.   Counsel's belief that he has created and is increasing a Rule 1.16(a)(2) physical condition that impairs his ability to represent the client, which *must* be made aware to the client and to the Court.   *See,* Rule 1.16(a), *supra,* states:

> "a) Except as stated in paragraph (c), a lawyer shall not represent a client *or*, where representation has commenced, *shall withdraw from the representation of* a client *if:* [as stated in Rule 1.16(a)(2), above such physical condition exists]." (Emphasis added.)

In Oklahoma Law it is settled that "shall" is a command that must be made, *i.e.* indicates *mandatory* withdrawal under these facts known to movant.   It is this motions' stated reason of physical inability that (1) Causes the motion's submission, (2) Made it known to Plaintiffs.   (3) Provides a medical explanation for movant's belief based upon prior experience that it will continue to worsen if current stress continues.   (4) Requests that if granted the Court grant sufficient time to retain, perhaps, a firm or at least more than a single counsel, so this same type of sole counsel representation is not repeated.

3

and (5) Last, movant represents to the Court that he will work closely with any such retained counsel(s) and without any fee charge to insure such that such transfer is made as rapidly as possible.

Respectfully submitted.

_  /s / Gary W. Gardenhire _____
Gary W. Gardenhire, OBA #3235
1005 Fountain Gate Cir.
Norman, OK 73072
Tel.:    405-701-3398
E-mail: ggardenhire7@gmail.com

Attorney for Plaintiffs

## ENDNOTES

**Note 1:**   This "condition" is verified by records of the United States Department of Veterans Affairs in movant's claim numbered "28528", which resulted in an award of a 60 percent bodily disability due to injury caused by exposure to Agent Orange during Vietnam War combat environment(s). Such exposure has, also, to date caused the insertion of several of movant's heart stents (the last two of which were "medical stents") and an open heart valve replacement of the heart's left ventricular artery. These  so-called "medical stents" were inserted by the late Dr. S. Ward Casscells III ( "the doctor");  *see, infra.*

**Note 2:**    The relevance of this to the present motion before the court is that  later, after several meetings with the doctor,  movant began to experience conditions very similar to those of the present.  Movant was directed .   .   . "ordered" by the Division Surgeon to meet with the doctor.   He did so, was accepted as a patient and, as stated above,  given additional implanted heart stents.  Dr. Casscells  saw movant on several subsequent occasions to check on his state of cardiovascular health until movant's leaving active duty in and departing from Houston in November, 2003.  During these 2003 meetings the doctor would always again advise movant of *how* to preserve his heart's health, *e.g.*, a balanced diet with sugar free or low sugar content, adequate sleep, no smoking (which movant had already done) and the like.   But knowing that movant was a litigation attorney he had *always* stressed -- very directly and determinately -- that this work environment undoubtedly contributed to movant's heart condition and that he should quit being a litigation attorney or, at least, substantially reduce the amount of time he was practicing law.

**Note 3:**   This doctor's advice then, and now, should be taken  seriously.  He was then among the most well known and respected cardiologist in the Nation.  He had graduated from Yale  College *cum laude*  with a B.S.  and later from from Harvard Medical School  *magna cum laude*  with his M.D. degree. Casscells was later board certified in internal medicine after completing his residency at Beth Israel Hospital  from 1979 to 1983. He was then board certified in cardiology after completing a fellowship at  Massachusetts General Hospital  from 1982 to 1985. From 1986 to 2007  Dr. Casscells had held a prestigious chair in medicine and public health at the University of Texas Health Science Center at Houston. He, also, had a limited private medical practice and was among the cardiologists caring for former President George Bush. President George W. Bush later appointed him as Assistant Secretary of Defense for Health Affairs.

4

## <u>CERTIFICATE OF SERVICE AND REQUIRED NOTICE</u>

I hereby certify that on June 6, 2023, a true and correct copy of the above and foregoing document was served upon the following defense counsel via the Court's electronic system, electronic mail, and/or U.S. Mail, postage prepaid thereon to:

> Sara E. Potts,
> 104 210 Park Avenue,
> Doerner, Saunders, Daniel, et al
> Suite 1200
> Oklahoma City, OK 73102
>
> -and-
>
> Michael S. Linscott and
> Alexandra J. Gage,
> Williams Center Tower II
> 2  West Second Street, Suite  700
> Tulsa, OK 74103-3117
>
> ***Attorneys for Defendant Travelers***
> ***Commercial Insurance Company***

I further swear  that a notification  of movant's motion was on the same date furnished to Plaintiffs addressed to their electronic notices of record:  **bigbob@gmail.com**  and **turoczishad@gmail.com .**

>    */s/ Gary W. Gardenhire*   
> Gary W. Gardenhire, Counsel

5